Bardwell
v.
Howe and others.

## BARDWELL *vs.* HOWE and others.

A mortgagor who has executed a mortgage alleged to be usurious cannot be examined as a witness to prove the usury by a subsequent purchaser of the property, even though he is indemnified by such subsequent purchaser.

A mere trustee may be examined as a witness in favor of either party.

Usury depends upon *intent,* and the court will look into the whole transaction, subsequent acts as well as cotemporaneous acts to judge of the intent of the parties at the time of the transaction, and if upon the whole an usurious intent is apparent, the contract will be declared void.

JARED D. HOWE, one of the defendants executed a mortgage to Calvin Cheeseman for $1,400, dated Nov. 1st, 1836, which, on the same day was assigned by Cheeseman to John Tice for $1,000. Tice afterwards assigned the mortgage to the complainant,

Aug. 1840.

Bardwell
v.
Howe and
others.

who filed this bill to foreclose the same ; Turner, a subsequent mortgagee, defends and insists that the mortgage was usurious ; executed in pursuance of an usurious agreement, between Howe and Tice, and that Cheeseman was a mere agent, and the mortgage executed to him only as a cover, and to give an appearance of legality to the transactions. The cause comes on to be heard upon pleadings and proofs.

*A. Thomas*, for complainant.

*G, Hard*, for defendant Turner.

THE VICE CHANCELLOR. Jared D. Howe, the mortgagor, was examined as a witness by his co-defendant Turner, who executed to him a bond of indemnity against any liability he might incur, or be subjected to in this suit. The reading of his testimony is objected to. As Howe is the mortgagor, and is liable on his bond, it seems that he has such an interest, that he cannot be used as a witness. In such case, I apprehend the bond of indemnity will not be sufficient, neither is it sufficient, that no notice of the surpression of his answers to the interrogatories has been given. A party when he is examined as a witness is always examined subject to all just exceptions, and it is not too late to make the objection to his testimony at the hearing. 2 Paige, 60. Howe is deemed incompetent from his interest, to be a witness as to the facts to which he has testified, and his testimony will be disregarded.

Independent of Howe's testimony, it appears in proof that the mortgage was executed to Cheeseman without any immediate consideration, passing from Cheeseman to Howe, Cheeseman was endor-

ser upon Howe's note, which was held by Tice. This note Cheeseman was doubtless anxious that Howe should pay, and he represented to Howe, that by executing a mortgage on his farm, he could have this note paid, and obtain some money besides. The amount of the mortgage agreed upon to be executed was $1,400, but Cheeseman told Howe that $1,000, was all that would be advanced upon it. The question which should and must constitute the decisive one in this cause is, whether there was an usurious agreement made between Howe and Cheeseman, or Howe and Tice previous to the execution of the mortgage.

If there was any such agreement, the mortgage must be deemed void in the hands of any other person to whom it may have been assigned. But on the other hand, though the mortgage was for $1400, and Howe procured but $1,000 upon it, yet this may have been done under circumstances which would not render it void, *ab initio.*

As thus, if Howe desired to raise money, and being ignorant of how much he could raise, should execute his mortgage for $1,400, and should only succeed in raising $1,000, and the person who took it should hold it only for $1,000, the amount actually advanced, the mortgage would be good for that amount, it is the previous corrupt intention to take more than seven per cent which vitiates an instrument for usury This intention may, in most cases, be presumed from facts attending the transaction, which facts reflect back and shew or shadow forth the character of the acts of the parties. Rejecting the testimony of Howe and looking at that of Cheeseman, which was taken without objection, we shall

see that Howe had no previous arrangement with Tice. Cheeseman told Howe if he would execute a mortgage for $1,400, he, (Cheeseman,) could get for him $1,000 down for it. This affords a strong presumption, and indeed the testimony shows the fact, that Cheeseman had had some previous arrangement with Tice ; but it is not of itself conclusive as to the character of that arrangement. Cheeseman might have had his own purposes to answer, and it seems did have, in asking Howe to execute a mortgage for more than $1,000 ; and this purpose may not have been communicated to Tice. Howe knew that Cheeseman was not himself to advance the money. The mortgage in Cheeseman's hands was mere waste paper. It could not be enforced by Cheeseman, when it was transferred to Tice. Howe admitted to Tice that the mortgage was *bona fide.* So far then as Howe understood it, his admission was justifiable. The mortgage was given to raise money, and it would be *bona fide,* for the amount of money advanced upon it. If Tice after the advance of $1,000, in the way it was advanced by him, had held this mortgage simply as security for the $1,000, I should have held it good in his hands for that amount, considering the relation between Tice and Cheeseman, the belief, at least will be very strong, that Tice knew, or had reason to believe, that Cheeseman had advanced nothing upon the mortgage. This inference is strengthened by the fact that the mortgage and assignment were drawn and executed the same day, in the same office, and to the knowledge of Tice, whether he saw the execution or not. This fact alone should have put Tice upon inquiry But we must look to Tice's subsequent acts as evidence

of his original intention. As has been remarked before, if Tice had held this mortgage as security for only the $1,000, advanced by him, I should have considered this evidence of his fairness. But when Tice, transfers it, he transfers it for the whole $1,400. It is true that this is endeavored to be sustained by proof, that he executed to Cheeseman an obligation for $400, but this was not delivered until November 1838, a circumstance of itself suspicious, and tending to shew that the parties had become alarmed for the validity of their security, and endeavored to patch it up in this way. This transfer by Tice, for $1,400, is a circumstance which though subsequent in time, may well be taken into consideration to enable the court to determine as to the original character of the transactions. If it is such evidence it has a strong bearing against its validity, Tice was examined as a witness, his testimony is objected to. But if it standsthere is the testimony of several other witnesses to show his declarations, that he had paid but $1,000, for the mortgage, which will completely rebut his testimony in its material points, if it is stricken out the case is left upon the other testimony, so that it is not material what decision is made upon this point, Hosselkins being a mere trustee, was a competent witness. Upon the whole and after a careful examination of the testimony (and it is a case of mere testimony,) I have come to the conclusion that it is a case which would warrant a jury in finding that the mortgage was usurious.

This conclusion would render it void, and inoperative in the hands of the complainant. The mortgage must be declared void for usury, and the complainants Bill must be dismissed with costs to be taxed.