1830.

Mohawk Bank
v.
Atwater.

THE MOWHAWK BANK *vs.* R. & P. ATWATER.

A creditor may file his bill to set aside a fraudulent conveyance of the real estate of his debtor as soon as he has obtained a judgment, which is a lien on the land.

A judgment continues to be a lien on real estate, after the expiration of the ten years, as against the defendant in the judgment or his grantee without valuable consideration, but not as against bona fide purchasers or incumbrancers.

Where a debtor with an intention of defrauding his creditors executes a conveyance of his property without any valuable consideration being paid by the grantee, the conveyance is void as against such creditors, although the voluntary grantee was not privy to the fraud.

Where a party is examined as a witness between other parties in the suit, he is always examined subject to all just exceptions, and if he is interested, the objection may be taken at the hearing, although it has not been previously made.

But in ordinary cases the objection to a witness must be made at the time of his examination, or before the closing of the proofs in the cause.

It is the duty of the sheriff to sell lands in parcels where the property is so situated that it will probably produce more by that mode of selling; or where a part only is required to satisfy the execution.

But a sale of several parcels together does not render the sale void, but only voidable; and after a great lapse of time the sale will not be disturbed.

February 16th.    IN May, 1816, Russell Atwater was the owner of the premises in question in this cause, together with a large tract of land in the county of St. Lawrence. By a deed of that date, in consideration of one dollar and the love and good will which he bore to his son Phineas, he conveyed to him the mill lot now in controversy with the buildings thereon. At the date of this conveyance R. Atwater was extensively indebted to the complainants and others, and as the event proved, was then insolvent, although he had at the time considerable property in his hands. On the 1st of July, 1816, the complainants obtained a judgment for their debt against R. Atwater, and in 1817 they issued an execution upon such judgment, by virtue of which, in March, 1818, the lands of R. Atwater in the county of St. Lawrence, including the mills and mill lot in controversy, were sold by the sheriff of that county and were purchased in for the complainants by their cashier, to whom they were conveyed by such sheriff. A large balance still remains due upon the complainants' execution, and the com-

plainants have offered to both defendants to reconvey to them the whole property purchased at the sale upon receiving the amount of their debt and advances. The bill in this suit was filed in 1825 to set aside the conveyance of May, 1816, upon the ground of its being fraudulent and void, and in order to obtain possession of the mills and mill lot in question and for an account of the rents and profits thereof. Numerous witnesses were examined, and the cause was finally heard upon the pleadings and proofs, at the last March term.

1830.

Mohawk Bank
v.
Atwater.

*A. Van Vechten & A. C. Page,* for complainants. The deed from the defendant Russell Atwater to the defendant, Phineas Atwater, was a voluntary conveyance and without consideration, and was therefore fraudulent and void as against the creditors of Russell Atwater, he being deeply involved in debt at the time of the execution of the deed. Being indebted beyond an ability to pay is conclusive evidence of fraud. A man in embarrassed circumstances cannot provide for his family at the expense of his creditors. A voluntary deed is void equally against subsequent as against prior creditors. (*Jackson ex dem. Van Wyck,* v. *Seward,* 5, Cowen's R. 67, 72. *Reade* v. *Livingston,* 3 John. Ch. R. 481. 3 Cruise's Dig. 374, tit. 32, ch. 22, § 26, 28. id. 377, tit. 32, ch. 22, § 32, 33. id. 385, tit. 32, ch. 22, § 51. *Jackson* v. *Brush,* 20 John. R. 5. *Hildreth* v. *Sands,* 2 John. Ch. R. 48. *Verplank* v. *Sterry,* 12 Johns. R. 552. *Murray* v *Riggs,* 15 Johns. R. 587. *Anderson* v. *Roberts,* 18 Johns. R. 526, *per Spencer Ch. J.*) Deeds executed with intent to defraud creditors, although made for a good and valuable consideration, are void. Actual fraud in giving a conveyance of real property may be inferred from circumstances. (3 Cruise, 372, tit. 32, ch. 22, § 19. 3 id. 394, tit. 32, ch. 22, § 63. *Sands* v. *Hildreth,* 14 John. R. 493. *Wickham* v. *Miller,* 12 John. R. 320. *Jackson* v. *Myers,* 18 John. R. 425. 3 Bac. Ab. 312, 314, title Fraud c. *Jackson* v. *Terry,* 13 John. R. 471. *Hildreth* v. *Sands,* 2 John. Ch. R. 35, 41.) The circumstances of this case shew, that the deed in question was given with intent to defraud creditors. To make a bona fide purchase, payment of the consideration money must be made

out; it must be actually paid, and not merely secured to be paid; for otherwise the purchaser could not be hurt. (*Jackson* v. *Cadwell*, 1 Cowen's R. 641, 2. *Jewett* v. *Palmer*, 7 John. Ch. R. 65, 68. *Hendricks* v. *Robinson*, 2 John. Ch. R. 283.) The consideration expressed in the deed is one dollar and paternal love and affection. The defendants cannot now set up a different consideration; for the rule is well settled that parties are concluded from setting up a different consideration from the one expressed in the deed, except in the cases of fraud, mistake or surprise. (*Botsford* v. *Burr*, 2 John. Ch. R. 415.) Upon no other ground can a deed be contradicted by parol proof. The rule of evidence that parol proof is inadmissible to contradict or substantially vary the legal import of a written agreement, is the same in equity as at law. (*Stevens* v. *Cooper*, 1 John. Ch. R. 429.) Where the consideration is expressly stated in a deed, and it is not said, "and also for other considerations, proof of any other consideration is inadmissible. (*Maigley* v. *Haiver*, 7 John. R. 341.) This doctrine was recognized by Chancellor Kent, in *Benedict* v. *Lynch*, (1 John. Ch. R. 381.) In that case he cites the case of *Peacock* v. *Monk*, (1 Ves. sen. 127,) where Lord Hardwick held the same doctrine. It would seem then, that if Phineas Atwater had paid a valuable consideration for the deed in question, it could not have availed him, as he is bound by the consideration expressed in the deed. The evidence produced to shew that the mill lot was excepted from the sale is altogether insufficient. The whole transaction between Russell and Phineas Atwater is stamped with fraud. In May, Russell Atwater was pressed to pay his debt to the complainants. In June thereafter, he gives this deed. He gives it too without consideration; for it is evident that the mill was erected with his money; and the services of Phineas not only appear to have been rendered during his minority, but they also have been proved to have been of no value. Judgment creditors may always come into chancery to have a fraudulent incumbrance or conveyance removed. It is too late now to suppress D. Boyd's testimony upon the ground of interest. The objection should have been made before the proofs were clos-

ed. Agents having an interest, are good witnesses in relation to matters connected with the agency. No objection or complaint was made at the time as to the mode of sale. It is now too late to make such objection. It is not put in issue by the pleadings ; and the defendants having so long acquiesced in the sale, cannot now disturb it.

*D. Selden*, for defendants. The witness D. Boyd was interested, being a stockholder in the Mohawk Bank. The complainants were bound to shew that his interest had ceased to exist or had been discharged. The deed to Phineas Atwater is valid and was given for a sufficient consideration. The consideration expressed was not intended to deceive any person. The transaction was not kept concealed, but was made as public as it well could be. Mills are so important to large tracts of land that it would advance the interest of a large land holder to grant a mill seat for no other consideration than that of having a mill erected upon his land. The services of Phineas Atwater were valuable to his father, and fully equal to the decreased value of the land at the time the deed was given. Where the contract is binding between the parties, and is sought to be impeached by proof aliunde, it may be supported by like proof. In all the cases cited on the other side, one of the parties to the deed sought himself to enforce it. ( *Botsford* v. *Burr*, 2 John. Ch. R. 415. *Green* v. *Weston*, Sayre's R. 209.) In a controversy between one of the parties and a stranger, either of them may enquire into the whole character of the instrument. ( 3 Starkie on Ev. 1051. *King* v. *Inhabitants of Scammonden*, 3 T. R. 474. *King* v. *Inhabitants of Laindon*, 8 id. 379. *King* v. *Inhabitants of Shenfield*, 14 East's R. 544. ) Grantees may always enquire into the true consideration of conveyances, when there is in fact some other consideration than the one expressed. A deed fraudulent in its inception may become valid by matter ex post facto. ( *Verplanck* v. *Sterry*, 12 John. R. 552. ) Thus the services of Phineas Atwater and wife subsequent to the date of the deed may render it valid as the consideration thereof. ( *Murray* v. *Riggs*, 15 John. R. 587, opinion of Thompson, Ch. J.

The complainants cannot enquire into the validity of the deed to Phineas Atwater, for they have not shewn in their bill that their demand is unsatisfied. They cannot succeed as purchasers, for they never purchased the mill. As judgment creditors, they have no title from which to remove a cloud. The sale was void, the whole tract of land having been sold together and not in parcels. ( *Woods* v. *Monell,* 1 John. Ch. R. 502.) If there be doubts whether any particular parcel was sold, the court will intend it was not sold.

THE CHANCELLOR. The main question in this cause is whether the deed of R. Atwater to his son is to be considered fraudulent and void as against these complainants as judgment creditors. If it was void as against them, they had a right to file their bill to set it aside as soon as they obtained a judgment, which was a lien upon the property. ( *Beck* v. *Burdett,* 1 Paige's R. 308.) The judgment is still a lien upon the property as against these defendants, although it would not have been against a bona fide purchaser, after the expiration of the ten years. If the property was not legally sold, the conveyance may still be set aside to enable the complainants to go on and sell it for the satisfaction of the residue of their debt. but if it was legally sold, they will be entitled to a decree for the immediate possession of the premises and for an account of the rents and profits, as well as to a decree setting aside the fraudulent conveyance. I shall therefore first consider whether the deed was void as against the complainants.

Previous to the decision of the court of errors in *Seward* v. *Jackson,* (8 Cowen's R. 406,) this court had decided that a voluntary conveyance was void as against creditors who had pre-existing debts. ( *Read* v. *Livingston,* 3 John. Ch. R. 481. *Bayard* v. *Hoffman,* 4 id. 450.) The principle of these cases was adopted by the supreme court in the case of *Jackson* v. *Seward,* ( 5 Cowen's R. 67,) and by the supreme court of the United States in *Sexton* v. *Wheaton and wife,* ( 8 Wheaton, 229. ) But since the decision of *Seward* v. *Jackson,* the correctness of the former decisions is left in great doubt, if they have not been wholly overturned. From the conflicting opinions of various members of the court, it is impossible to say upon what

principle the majority of those voted who were in favor of the reversal of the judgment of the supreme court; but if they adopted the opinion of Spencer and Allen, senators, a voluntary conveyance is not void even as against antecedent creditors. It is only prima facie fraudulent as against them; and it is doubtful whether the revised statutes have not gone still farther, and thrown the onus probandi, in all cases, upon the creditor who attempts to impeach a voluntary conveyance as fraudulent. (2 R. S. 137, § 4, and revisors' note.) This statute however cannot affect the decision of this court upon a case which had previously arisen.

From the testimony, I am satisfied that this conveyance was fraudulent in fact as against the creditors of the father. At the time of the conveyance, the grantor was indebted to various individuals in a sum exceeding fifty thousand dollars, most of which was then due. His property, to a great extent, was in wild lands, which could not be converted into money in time to meet the demands of his creditors, even if it should ultimately prove sufficient. In this situation, and a few weeks before he confessed the judgment to the complainants, and when they were undoubtedly pressing him for payment, he conveyed this mill scite, on which he had already contracted to build an extensive establishment. Independent of the deed's purporting on its face to be a voluntary gift to the son, the weight of evidence is that no real consideration passed between him and the father. The defendants do not allege in their answer that the son had performed services, after he became of age, which constituted any part of the consideration of the conveyance. It is also evident from the testimony that a great portion if not all of the funds which were afterwards expended in making the erections on the premises were the proceeds of the father's property, which ought to have been devoted to the payment of his honest creditors. It is of no consequence in this suit whether the son knew the extent of his father's indebtedness or not. If the father committed a fraud upon his creditors by giving away property which should have been reserved for them, the grantee without valuable consideration cannot be protected, although he was not privy to the fraud. The deed of 1816 must therefore be declared fraudulent and void as against the complain-

*1830.*

*Mohawk Bank*
*v.*
*Atwater.*

1830.

Mohawk Bank
v.
Atwater.

ants, and all persons claiming as purchasers of the premises under their judgment against Russell Atwater; and the defendant Phineas Atwater must release to the complainants all interest in the premises derived by him under that deed.

The next question is whether there was a valid sale of this property under the judgment, so as to entitle the complainants to the possession of the premises without the expense and delay of a new sale by the sheriff. On this question, the evidence of David Boyd is material; and it may be necessary to consider an objection made to his testimony on the hearing.

It is alleged that he was a stockholder in the bank at the time he gave his testimony, and was therefore an incompetent witness for the complainants. If this were true in point of fact, and the objection had been made in time, his testimony must have been excluded. A stockholder in a monied corporation cannot be a witness in its favor, where the result of the suit will be to increase or diminish the funds of the institution. The witnesses were examined on written interrogatories. No objection was made to the competency of David Boyd as a witness during his examination, or at any time before the proofs in the cause were finally closed. He was examined as a witness in July, 1828. Several weeks after his testimony was closed, John Boyd, the father in law of one of the defendants, in answer to the last and general interrogatory, stated among other things that about the time of the sale he understood from D. Boyd that he was a stockholder in the bank. Under the circumstances, the objection should have been made before the proofs in the cause were closed, so that the complainants might have introduced witnesses to disprove the allegation of interest, or have released and re-examined the witness. If Boyd was a stockholder in 1818, it does not follow that he was in 1828. The presumption of a continuance of his interest to that time would be very slight.

Where a party is examined as a witness as between other parties in the suit, he is always examined subject to all just exceptions, and only as to those matters in which he has no interest. In such a case it is not too late to make the ob-

jection to his testimony at the hearing. In other cases the objection must be made at the time of his examination, or at least before the proofs in the cause are closed.

There is certainly much contradiction in the testimony, as to what was actually sold by the sheriff; but I think the weight of evidence is, that the lot which included the mills, &c. was sold, without any reservation of this part thereof. If this matter is left doubtful by the parol proof, the sheriff's deed is very strong evidence in favor of the complainants on that point, and must settle the question in their favor. It would be going too far to say the sheriff's deed must be conclusive; but after such a lapse of time, the deed of the sheriff given immediately after the sale, and when he was acting under his oath of office, ought not to be set aside except on the most conclusive evidence of fraud or mistake in the description of the property.

The defendant's fifth point is, that the property of Russel Atwater was sold together, and not in separate parcels. It is undoubtedly the duty of the sheriff to sell in parcels whenever the property is so situated that it will probably produce more by that mode of selling, or where a part only of the property is required to satisfy the execution. In this case a large tract was sold together; but it was encumbered by heavy mortgages, and the whole tract would not have been sufficient to satisfy the execution by any mode of selling. In the peculiar situation of this property it is impossible to say whether the sheriff adopted the proper mode to make it produce the best price. A sale thus made is not void; it is at most voidable; and after such a lapse of time, great injustice might be done by vacating the same.

But in this case another objection exists to this defence. There is nothing said in the bill as to the manner of selling the property, and no objection is made in the answer that it was sold together and not in parcels. The whole of the defendant's testimony on that subject is therefore on a point not in issue by the pleadings, and no decree can be founded thereon. If this defence had been set up in the answer, the complainants would have been apprised of the necessity of showing by the testimony of witnesses acquainted with the

property and the incumbrances thereon, that the mode of selling adopted by the sheriff was that which was most beneficial for all concerned.

The defendants must therefore deliver up the possession of the premises to the complainants, on production of a copy of the decree in this case ; and there must be a reference to a master residing in the county of St. Lawrence to take an account of the rents and profits of the premises received by P. Atwater, or which he might have received by reasonable diligence while he has been in possession thereof. And on the coming in and confirmation of the master's report, the complainants are to have execution against the defendant P. Atwater for the amount reported due, and against both defendants for the costs of this suit to be taxed.