### GRAHAM *vs.* BERRYMAN and wife.

1. Objection to a witness, incompetent by reason of interest, whose interest may be released by the party offering him, need not be made at the very time of examination, but it must be made in time for the party to remove the incompetency of the witness, if practicable, or to supply, by other evidence, the want of his testimony.

2. Objections to testimony of a party to a suit, incompetent by reason of his interest, and made when he had no right to take further evidence, when they are substantial objections, should not be lost or waived by a slight inadvertence, which causes no injury to the opposite party; as the court would, in such case, extend the time for taking testimony.

3. A mortgage cannot be reformed, corrected, or declared void, for fraud or mistake in the consideration, in a suit brought to foreclose it, nor can that suit be defended on such grounds. The only remedy is by cross-bill for that purpose; and upon such cross-suit, the answer of the complainant to the original suit is evidence, so far as responsive to the bill.

4. An answer, fully denying the charges of the bill, and not impugned or contradicted by any witness, is conclusive as to such charges.

5. Under the general prayer for relief, any relief will be granted that the complainant proves himself entitled to upon the facts stated in his bill.

6. Courts of equity will relieve against mistake, and will correct and reform deeds and instruments of the most solemn character to grant such relief. But when such relief is sought, the mistake must be clearly proved.

7. Such mistake must be as to a fact, not only not known to the party, but one which he could not, by reasonable diligence, have ascertained. And where a party ought, in the exercise of ordinary prudence, to have made inquiry, and neglects to ascertain the facts upon which his contract is based, in cases where it is not necessary to repose confidence in the other party, or where it is as much his duty as that of the party with whom he deals to know the facts, courts of equity will not relieve against his own negligence.

The hearing of this cause was brought on upon bill, cross-bill, and proofs. The bill was filed to foreclose a mortgage given by Berryman and wife upon her farm, to Graham. A cross-bill was filed by Berryman and wife, to have the mortgage set aside as void, and the notes of Berryman, to secure which it was given, delivered up to be canceled, on the ground of fraud in the consideration. The alleged fraud

C *

consisted in fraudulent representations by Graham to Mrs. Berryman, first, of the character and fitness of the agent employed by her to purchase from Graham the lease of a dry goods store and the goods contained in it, and intended to be employed to conduct the business for her; and, next, of the value, quantity, and original cost of the goods. The contract alleged was, that Graham agreed to sell the lease and the goods in the store for the original cost of the goods, less ten per cent. And the cross-bill alleges, that Graham furnished to Mrs. Berryman a list of the goods, in which the quantity and original cost of them were fraudulently misstated as greater than they in fact were, for the purpose of defrauding her; and insists that $5000, which had been paid on the mortgage, was equal to the value of the goods at the contract price, and that the notes and mortgage should be declared void, and given up to be canceled, and that an injunction should issue against proceeding in an ejectment, brought by Graham upon the mortgage. The cross-bill contains also the general prayer for relief.

*Mr. L. Zabriskie,* for complainant.

The defendants, by their cross-bill, set up, as a defence to the mortgage of complainant, fraud and misrepresentation by the complainant in two particulars: 1. As to the character and business capacity of one Alexander Just, to whom, as the defendants allege, they gave the charge of their business, on complainant's recommendation. 2. As to the quality and cost prices of the stock of dry goods, for which the mortgage was given in payment.

1. All misrepresentation by the complainant, as to the character and capacity of Just, is positively denied in complainant's answer to the cross-bill. And no proof whatever to sustain the allegation, or to contradict complainant's cross-answer on this point, has been produced by defendants.

2. The only representation whatever shown in the case to have been made by the complainant, in regard to the quality

and cost prices of the stock of dry goods, was the handing over by the complainant a list of the dry goods, with the cost prices marked and footed up. When, however, complainant gave defendants this list, he told them not to rely upon it, but to take it and go to the store where the goods were, and see if it was correct. Under these circumstances, defendants went to the store and examined the goods, with this stock list. The list was made out for the complainant by his agent in charge of his store, and the clerks under him, and given to the complainant for his guidance in making the sale of the goods. He then says to defendants, this is what I am told is in the store; go and see if it is right. There was no misrepresentation here.

But if complainant did represent the stock list to be true, by the mere act of handing it over to defendants, it is contended that it should be shown to have been false to complainant's *knowledge;* yet it is established, by complainant's answer to cross-bill, that he believed it to be true. *Carley* v. *Wilkins,* 6 *Barb.* 557; *Case* v. *Boughton,* 11 *Wend.* 108; *Ormrod* v. *Huth,* 14 *Mees. & Wels.* 663; *Polhill* v. *Walter,* 3 *B. & Ad.* 114.

The defendants, moreover, acted upon their own judgment, after an examination of the stock of goods, and did not rely upon the stock list. Therefore, if it was false, they can take no advantage of it, for it did not influence them in their purchase. *Taylor* v. *Fleet,* 1 *Barb.* 475; 1 *Story's Eq. Jur.,* § 200 *a,* § 146, and § 191; 2 *Kent's Com.* (9th ed.) 656; *Trower* v. *Newcome,* 3 *Merivale* 704.

Representations by a seller, as to his belief as to quality or value, is no fraud or warranty. 2 *Kent's Com.,* (9th ed.) 658; *Jendwine* v. *Slade,* 2 *Esp.* 572; *Broom's Legal Maxims,* 357.

It is not claimed that there was anything but a *partial failure* of consideration; and this is no defence to a suit brought upon a *security* given for the price. *Tye* v. *Gwynne,* 2 *Camp.* 346; *Mann* v. *Lent,* 10 *B. & C.* 877; *Thornton* v.

*Wynn*, 12 *Wheat.* 183; *Beninger* v. *Corwin*, 4 *Zab.* 257; *Morgan* v. *Richardson*, note to 1 *Camp.* 40.

3. The evidence adduced by the defendants, to show that this stock list was, in fact, a false statement of the quantity and cost prices of the dry goods, is not of such a character as can be believed, especially to defeat a solemn instrument under seal. It consists of the testimony of three clerks, employed by complainant's agent in the store where the goods sold were, who testify that they, on their own responsibility, without instructions from any one, caused the goods to be falsely set down on this stock list. They appear to have had no object in doing this. They say the complainant knew nothing about it. They have come of their own accord from another state, voluntarily, to testify for the defendants, that it was they who caused them to be cheated by this stock list. Their testimony is contradicted by the complainant's agent in charge of the store, and also by one of their fellow clerks.

This is certainly not such evidence as will authorize a court to set aside a mortgage under seal. 1 *Story's Eq. Jur.*, § 200.

*Mr. Gilchrist* and *Mr. C. H. Voorhis*, for defendants.

THE CHANCELLOR.

The complainant in the original suit, Mr. Graham, was sworn as a witness, without objection at the time. Objection was made to his competency at the closing of complainant's evidence, and before any testimony had been taken by the defendants, and testimony was taken by both parties after this objection. There is no doubt but that Graham is an incompetent witness, as Berryman and his wife are both adverse parties in interest, and either cannot be sworn. The only question made was, that the objection was not made in the proper time, that is, at his examination. Counsel, on the argument, declined to press or argue the objection, but

distinctly stated that he did not waive it, and it is, therefore, my duty to decide it.

Chancellor Pennington held, in *Neville* v. *Demeritt*, 1 *Green's C. R.* 334, " that witnesses should be objected to at the time of their examination." But his intention in this expression must be gathered by what he had just before stated; " that, in the case of a witness whose interest might be released by the party offering him, I would certainly not sustain such an objection for the first time made at the hearing, without giving an opportunity to release that interest, and for a re-examination, if the party thought proper." And the only authority cited by him, the case of *The Mohawk Bank* v. *Atwater*, 2 *Paige* 61, says : " The objection must be made at the time of the examination, or at least before the proofs in the cause are closed." The reason on which the rule is founded, does not require that the objection should be made at the very time of examination, and not after. But it must be made in time for the party to remove the incompetency of the witness, if practicable, or to supply, by other evidence, the want of his testimony. This I hold to be the true rule.

Here the objection was made at the closing of complainant's evidence, and when, as the case stood, he had no right to take further evidence. I was inclined to think that it came too late, even under the modification of the rule in *Neville* v. *Demeritt*, above stated. But objections to testimony that are substantial objections, as this is, should not be lost or waived by a slight inadvertence, which causes no injury to the opposite party. And, as the court would always in such case grant further time to restore competency to the witness, or to procure other testimony, I must hold, that in this case the objection was in time, and overrule Graham's evidence.

A mortgage cannot be reformed, corrected, or declared void, for fraud or mistake in the consideration, in a suit brought to foreclose it, nor can that suit be defended on such grounds. The only remedy is by cross-bill for that purpose.

*Miller* v. *Gregory*, 1 *C. E. Green* 274. And, therefore, in this case, the only remedy for the defendants is upon their cross-bill. And in that suit, the answer of Graham is evidence, so far as responsive to the bill.

Graham's answer denies, fully, all fraud in representations as to the agent of the defendants, and as to that is conclusive, as no proof is offered on that point. It also denies the charge in the cross-bill, that he or his partner, Aitkin, handed to Mrs. Berryman's agents a book, in which the measurements and prices of the goods were written as a just and true account of the quantity and cost prices of said stock of goods, or that he said, or in any way gave them to understand, that it was accurate and true. And the answer avers, that the list was made for themselves, to ascertain the amount and cost of the stock of goods, to enable them to fix the price, and that he handed it to Mrs. Berryman's agents, and expressly told them to take it and compare it with the goods, and see if the quantity and prices were correct; and that it was distinctly understood between him and them, that the goods were not to be purchased upon the faith of that stock list; and it also avers, that he believed, and still believes, that the stock list was correct, and that he was privy to, and intended no fraud. These allegations are responsive, and are not impugned or contradicted by any witness. There can, therefore, be no relief on the ground of fraud.

The counsel for Graham insists, that as the bill is for relief on the ground of fraud, no relief can be had, except on that ground; and that, in this suit, no relief can be had on the ground of mistake. In the case of *Read's Adm'rs* v. *Cramer*, 1 *Green's C. R.* 277, the contrary doctrine was acted on, if not announced, by Chancellor Pennington. And the rule is, that under the general prayer for relief, any relief can be had that the complainant is entitled to upon the facts stated in his bill, so far as proved. If a failure of consideration is shown by such mistake between the parties as can be relieved in this court, although it was occasioned by the mistake, and not the fraud of the party, as charged in

the bill, the relief can be granted in the suit.    If Mrs. Berryman is entitled to relief from the mortgage on the ground of mistake, I am of opinion she can have it on this cross-bill.

The answer of Graham admits that he agreed to sell the stock of goods for ninety per cent. of the cost price of the goods.    This is the agreement, as charged in the cross-bill; and the complainants in it contend, that if by mistake, and without fraud, a greater sum was inserted in the mortgage, it should be reformed and corrected to the true amount.

Courts of equity will relieve against mistake, and will correct and reform deeds and instruments of the most solemn character to grant such relief.    But when relief is sought from deeds or other writings, the mistake must be clearly proved.    1 *Story's Eq. Jur.*, § 152.

Again: the mistake must be as to a fact, not only not known to the party, but one which he could not, by reasonable diligence, have ascertained.    Where a party ought, in the exercise of ordinary prudence, to have made inquiry, and neglects to ascertain the facts upon which his contract is based, in cases where it is not necessary to repose confidence in the other party, or where it is as much his duty as that of the party with whom he deals to know the facts, courts of equity will not relieve against his own negligence.

In this case, Graham did not undertake, except for himself, to ascertain the quantity or cost price of the goods.    He gave the purchaser the result of his inquiry as an aid, and invited her to examine for herself.    No person of ordinary prudence would have neglected to examine the quantity, and inquire into the cost of the goods of an old store, purchased for over $9000, as these were.    The opportunity was given.    The goods were at his service for more than a week, and the clerks were there, who by their own testimony, when produced by him, changed the cost prices, which they then knew.    1 *Story's Eq. Jur.*, § 146, *and note.*

Besides, she sold these goods without re-measurement, and without giving Graham any opportunity of ascertaining the

amount of the error, if any; she sold and disposed of them without any complaint to Graham, until payment of the mortgage was insisted on, eighteen months after the sale. This negligence, in this case, would work a grievous wrong to Graham, who was guilty of no fraud, by depriving a vigilant man of all means of ascertaining the truth and rectifying the mistake, in order to relieve a negligent purchaser from her own laches.

But I am not satisfied by the evidence, that there was any error or mistake of any importance in the list of goods and prices to rectify. The principal, if not the only proof of it, is the testimony of the three witnesses, Hornridge, Foy, and McGraff. They were three clerks in the store up to the time of sale, employed by Gage, who for years had conducted it as if his own, for Graham and Aitkin. These clerks seem to have supposed that Gage owned the goods and business, and had mortgaged or pledged them to Graham and Aitkin. They were present at the making out the account of stock in question. They measured the goods, and marked the quantity and prices on them, and they testify that they falsely marked the quantity and prices too large; that they did it voluntarily, without request from Graham, Aitkin, or Gage; they did not know that Graham or Aitkin knew of it, but suppose that Gage did. Two of them supposed that they were aiding Gage to take advantage of Graham, to whom they had an antipathy; and one took it for granted, that as there was to be a real sale, the goods were expected to be marked up. Witnesses, attempting to aid a party by voluntarily swearing to a fraud concocted by themselves, without a request from any one, are hardly such as come up to the rule requiring *clear evidence* to set aside or reform a solemn instrument. The evidence of these witnesses is hardly credible, even if it had not been contradicted.

Besides the answer of Mr. Graham, it is contradicted by the evidence of Gage, who called off, from the marks upon the goods themselves, the quantity and prices that Aitkin put down in the stock book. Gage knew the goods longer

and better than any witness; he knew the old cost marks on them, which he says were never changed; from these marks, he called them out to Aitkin. Unless Gage is false, there was no mistake in that list, as contended. His want of truthfulness is not shown by his own evidence, or any other evidence in the cause. Moore was present at the account, and took part in it; he denies that there was any marking up of measurement or prices. It is true, that these ingenious clerks, bent on fraud, might have done it in his presence, and concealed it from him; but their testimony, that it was understood by all in the store, cannot be true if he is believed.

The fact which appears by the responsive answer of Graham, that Berryman was satisfied, and made no complaints until called on to pay the residue of the mortgage when due, leads to the conclusion, that this defence was got up to meet the emergency, and would not have been thought of had no difficulty occurred about urging payment.

The relief sought in the cross-bill must be refused, and the bill dismissed. The complainant is entitled to a foreclosure of his mortgage, and to have an account taken of the amount due on it.