Gale v. Morris.

GEORGE H. GALE and others, executors, appellants,

*v.*

DEWITT C. MORRIS and others, respondents.

A mortgagor intended to give, and the mortgagee expected to receive, a mortgage in fee, but, for want of words of inheritance, the mortgage, as executed, conveyed only an estate for life. A second mortgagee had such actual notice of the first mortgage as induced the belief that it was a mortgage of the fee, and, so believing, took the second mortgage. *Held*, that, as against the second mortgagee, the first mortgage should be regarded as a mortgage of the fee.

On appeal from a decree of the vice-chancellor, reported in 2 *Stew.* 222.

*Mr. Bentley* and *Mr. Williamson*, for appellants.

*Mr. Alward*, for respondent.

DIXON, J.

On May 20th, 1873, D. W. C. Morris executed to the complainants a mortgage upon lands in Hudson county, to secure payment of $12,000. The instrument was prepared by a member of the New York bar, who erased the printed word "heirs," in the granting and *habendum* clauses of the mortgage, and, as the mortgagees were described as executors, substituted for it the word "successors," thus causing it to convey, by its terms, only a life-estate. On the day of its execution, the mortgage was entered upon the records of Hudson county, but whether registered or recorded in full, does not appear. On December 27th, 1875, Morris mortgaged the same lands, in fee, to Hannah Bellamy (now Mrs. Briggs), to secure $4,000. Afterwards the complainants filed their bill in chancery, against Morris and Mrs. Briggs, to have their mortgage established as a mortgage of the fee, and to have a sale of the premises for its satisfaction, and charged that Mrs. Briggs took her mortgage with full knowledge of the complainants' mortgage, and of the agreement that it was to convey a fee, and with the belief and understanding that the premises were mortgaged in fee to them; and they insisted that her mortgage was second to theirs upon the fee of the land.

The bill calls for the answer of the defendants, under oath. Mrs. Briggs answers, in very general and very meager terms, "that she has no knowledge or information of any of the matters in said bill charged, nor any belief thereof, except such as she may hereafter set up; and she denies that she took [her mortgage] with the knowledge that any other estate than that stated in the record of the

mortgage to the complainants was intended to have been vested in the complainants by said mortgage to them, or that the same was intended to have been upon the fee of the lands."

All parties concede that the complainants' mortgage was intended to cover the fee, and that its reformation to that end is entirely proper as between the parties to it. The only question raised is as to the propriety of such an alteration against Mrs. Briggs. On this point the vice-chancellor found in favor of the complainants, and from that decision Mrs. Briggs appeals.

The substantial ground of contention is the character and effect of the notice which the second mortgagee had of the first encumbrance.

W. L. M., the draughtsman of both mortgages, and the counsel of Mrs. Briggs at the time, being called as a witness for the complainants, in April, 1877, stated that at the time he drew the complainants' mortgage he considered it embraced the fee, and only latterly discovered what he styles "the very singular adjudication in New Jersey" ruling otherwise. Evidently this novel view of the law dawned upon him after the second mortgage was made. He further alleged that it was proposed and assented to by D. W. C. Morris that a second mortgage should be executed by him to Mrs. Bellamy on certain property on which it was stated there was a pre-existing mortgage of $12,000; that in a conversation he had with Mrs. B., she expressed the desire that such a mortgage should be drawn; that he stated to her at that time what he considered the value of the property ($30,000 to $40,000), the amount of the mortgage to the complainants ($12,000), and that her mortgage would be a second mortgage, and he says that he unquestionably mentioned to her what the previous encumbrance was, but he did not state to Mrs. B., at the time of giving her the mortgage, that the complainants' mortgage was any greater than it appears on its face.

The complainants' mortgage was not at hand in any of these interviews, and clearly such information as the witness gave Mrs. B. concerning it, was based on his understanding at the time, and it cannot, therefore, be presumed to have been likely to lead her to the belief that it covered only a life-estate, or any estate less than a fee-simple.

Mrs. Briggs was sworn before a master as a witness in her own behalf, and was asked by her counsel about certain matters which transpired when Mr. Morris gave her the $4,000 mortgage. On cross-examination, the complainants' counsel asked her whether, when she took the mortgage, W. L. M. told her that Mr. Gale had a mortgage on the property, and whether she then knew that she was taking a second mortgage, and whether W. L. M. did not then tell her that her mortgage would be subsequent to Mr. Gale's mortgage for $12,000. These questions were objected to by the counsel of Mrs. B. as not cross-examination, and, though pressed, she, by the advice of her counsel, declined to answer them. The objection was ill-founded. The complainants were entitled to inquire from Mrs. B. all that had transpired, material to the issue and in her presence, at the interview of which she had, on examinations-in-chief, detailed some particulars. Her refusal to respond strengthens into conviction the suspicion which the formal answer to the bill engenders, that concealment was more to her interest than discovery, and justifies the strongest inferences against her, touching the subject of investigation. The pleadings and the proof satisfy the court that when Mrs. B. took her mortgage she knew of the complainants' mortgage, and believed it to be as comprehensive as her own; she understood it to embrace the fee-simple.

But this defendant further insists that conceding her notice to have been as broad as we think it was, yet such notice establishes against her only those facts which she would have ascertained by reasonable inquiry consequent upon the notice, that such inquiry would have led to only an examination of the complainants' mortgage, and that examination

Gale v. Morris.

would have shown that their lien covered no more than a life-estate.

To this contention two replies may be urged. First, if the rule be that notice, which puts one on inquiry, charges him with knowledge of only such facts as reasonable investigation will disclose, yet it might well have happened in this case that due investigation would have brought to light the fact of a mistake in the complainants' mortgage. The word "successors" following the description of the complainants, as executors, would of itself, probably, to the common mind, and perhaps to the legal mind, suggest the idea that the mortgagor intended to encumber more than an estate for life. The probability of this suggestion would be heightened if the mind started with the impression (which we think was conveyed to this defendant) not merely that there was a mortgage, but that there was a mortgage of the whole estate. If this idea had been in fact suggested, it would have been the duty of the inquirer to pursue it, and that, in the present case, would inevitably have led to a knowledge of the truth. Either the complainants, or the mortgagor, or her own counsel, would have informed Mrs. Briggs, for the asking, that the mortgage was intended to encumber the fee.

But, secondly, I think the rule, as applicable to the facts now before us, is not correctly stated in this contention of the defendant. The rule, so stated, has reference to those facts which lie outside of the notice itself, but which would be learned by such inquiry as a prudent man would make in consequence of the notice. If the party notified make reasonable investigation, he obtains actual knowledge of these facts; if he choose not to make it, he is charged constructively with knowledge of them. The rule merely prohibits him from taking advantage of his own imprudence to the detriment of another. But as to the matters that lie within the notice, the principle assumes another form. It charges the party with knowledge of those matters, so far as reasonable inquiry has not dissipated their credibility. If he is

unwilling to act upon the facts as the notice presents them, then the law demands that he shall make proper examination, and upon the result of that examination he may safely stand. *Williamson* v. *Brown,* 15 *N. Y.* 354. But if he prefer not to examine, it must be because he is satisfied to act as if the matters disclosed in the notice were true, and he cannot afterwards complain if his rights are made to rest upon them so far as they are true. The information given by the notice is equivalent to that obtained by inquiry. Nor, to one relying upon the notice alone, is it of any consequence that the rights indicated by it are mentioned as legal rights, when, in fact, they are equitable merely. As a guide for examination in pursuance of the notice, such a circumstance may be material; for the party, being informed only of a legal title, may fairly rest when he has ascertained the extent of that title, no other claims being suggested. As, for example, in this case, if Mrs. Briggs, having notice broad enough to cover a mortgage in fee, had obtained inspection of the mortgage or its record, and had thereupon reasonably concluded that it encumbered only an estate for life, it would be impossible to say that she had not used due diligence in research, and would not be, in conscience as in law, justified in resisting the claim of the complainants to extend their mortgage beyond its terms. But as she took her mortgage under the belief that the complainants were entitled to a prior lien upon the fee, and as the complainants were, in fact, so entitled, it is manifestly against conscience for her to seek to abridge their rights so as to enlarge her own, merely because she believed their title was both legal and equitable, and it turns out to have been equitable only. In such cases the equitable title is the substance, the legal title is but the form; and it has long been settled that, as against those having notice of the substance, courts of equity will maintain that, regardless of the form. *Finch* v. *Earl of Winchester,* 1 *P. Wms.* 277; *Le Neve* v. *Le Neve,* 1 *Lead. Cas. in Eq.* \*35; *Crofton* v. *Ormsby,* 2 *Sch. & Lef.* 583; *Rutgers*

v. *Kingsland*, 3 *Hal. Ch.* 658; *Weller* v. *Rolason*, 2 *C. E. Gr.* 13.

The decree of the chancellor should be affirmed.

Decree unanimously affirmed.