The bill is to reform a mortgage and to foreclose it.
[EDITORS' NOTE: MAP IS ELECTRONICALLY NON-TRANSFERRABLE.]
The above is a survey of a plot made up of lots 1-2-3 and 39 and a strip, part of lot 38, on a "Map of Passaic Park, New Providence, N.J."
Nicholas Delmore, the mortgagor, acquired the plot in 1923. The "first tract" in his deed comprises lots 1-2-3 and 39, identified by the map numbers and described by metes and bounds; the "second tract" in the deed is the strip, part of lot 38, and is described by metes and bounds without reference to the map. The strip fronts twenty-three and seventy-two one-hundredths feet on Schneider avenue, eighty-six and seventy-six one-hundredths feet wide in the rear and three hundred and fifty-six and fifty-two one-hundredths feet in depth along LaSecla Place, a twenty-feet *Page 272 
wide street. Delmore erected five dwellings on the plot, one facing Schneider avenue at the corner of LaSecla Place and four fronting on LaSecla Place with garages in the rear of each home, as shown on the survey. In 1926, Delmore borrowed $25,000 from Dominick Arace upon the security of the five houses and curtilages, and with intent to so secure him, executed to him a mortgage mistakenly conveying only the "second tract" in his deed — the strip, part of lot 38. It was recited in the mortgage that:
"It is understood and agreed between the parties hereto that the party of the second part will execute releases to the party of the first part for a curtilage of ground whereupon a house is built having a frontage of 50 feet by at least 100 feet depth, upon payment to the party of the second part by the party of the first part of five thouasnd dollars ($5,000) for each house released."
The mortgage was later assigned to one LaCorte who assigned it to the complainant, Elizabethport Banking Company, in 1928. The mortgage and the assignments were duly recorded.
In 1927, Delmore conveyed the plot to the Delmore Realty Company, a corporation created by him for his own convenience.
In 1931, the Peoples Banking and Trust Company issued an attachment against Delmore out of the Union county circuit court and the sheriff attached, inter alia, his stockholdings in the Delmore Realty Company and lands, not including the plot, and judgment was entered for $27,101.34. Not being able to make the money out of the attached property, the Peoples Banking and Trust Company filed a bill in this court in December, 1931, to declare the Delmore Realty Company trustee of the plot to the use of Delmore. There was a settlement and a consent decree was entered May 24th, 1932, ordering the Delmore Realty Company to execute to the Peoples Banking and Trust Company a mortgage for $25,000 conveying, inter alia, the plot. The decree recites: *Page 273 
"It is further ordered that in the event the Elizabethport Banking Company, a corporation, the holder of a mortgage of record upon premises owned by the defendant, Delmore Realty Company, a corporation, in the sum of twenty-five thousand dollars ($25,000) and upon which mortgage the defendant, Delmore Realty Company, a corporation disputes the true amount now due, shall institute proceedings to foreclose said mortgage, that, in that event, the defendant, Delmore Realty Company, a corporation, shall refinance said property for such sum as this court shall decree to be due to the Elizabethport Banking Company, and the complainant herein shall subordinate the lien of its mortgage hereby ordered to be executed, to a new mortgage to be procured, the amount of which shall be in the amount decreed to be due upon the mortgage held by the said Elizabethport Banking Company, a corporation, providing further that at the time of such subordination, the mortgage hereby ordered to be executed by the defendant, Delmore Realty Company, a corporation, to the complainant, shall not as to any term or condition be in default."
Accordingly, on June 13th, 1932, the Delmore Realty Company executed to the Peoples Banking and Trust Company its mortgage for $25,000, conveying, inter alia, the plot, with a provision for subordination in substantially the same language just quoted from the decree.
In February, 1932, the complainant filed this bill to foreclose its mortgage and it was referred to a master to ascertain and report the amount due the complainant as well as the amount due the defendant, Peoples Banking and Trust Company (it was made a party because of its judgment in attachment and its suit in equity) and whether the said mortgaged premises should be sold together or in parcels, and if in parcels, in what order. To make proof for the latter requirement, the solicitor of the complainant visited the premises in March, 1933, and, suspecting that the five dwellings, garages and curtilages were only partly within the land described in the mortgage, called in a surveyor; and for the first time it was discovered that the easterly line of the mortgaged premises, indicated by the dotted line on the survey, cut through two of the dwellings and one of the garages and left them all without suitable curtilages. The complainant amended its bill to reform its mortgage to conform the description to the agreement. The misdescription *Page 274 
was due to the scrivener erroneously adopting the "second tract" in Delmore's deed as descriptive of the land upon which the five dwellings stood; the circumstances leading to the confusion are of no moment, for it is obvious that the mortgage in the form in which it was written was not as either party meant it to be, and that the mistake was mutual. In negotiating the loan, Arace was taken to the premises by Delmore's representative and shown the dwellings; three were erected and occupied and two were in the course of construction, as were the garages to each house, and there was a clear understanding that the security should be the dwelling on the corner in which Delmore lived, with the curtilage, and the four houses on LaSecla Place and curtilages sufficient to include the garages. Delmore concedes this and the Delmore Realty Company, the present owner, consents to a decree reforming the description according to the prayer of the bill.
The Peoples Banking and Trust Company objects, principally upon the ground that it was a bona fide mortgagee for a valuable consideration without notice. To this we cannot assent. We need not concern ourselves with its claim as judgment creditor in attachment, for the plot was not attached; title was in the Delmore Realty Company and Delmore's stock in the company was attached. And as to any right it acquired by its bill to impress the plot with a trust, that, at most, is but an equity subordinate to the prior equities of the complainant. As mortgagee, the Peoples Banking and Trust Company took its mortgage for a preceding debt; it is true, it surrendered a fraction of its debt to obtain the mortgage, and in this respect may be regarded as having paid a present valuable consideration, but that does not advance its equities, for it had actual notice of the complainant's mortgage, and that the mortgage covered five dwelling houses — its counsel, in charge of its affairs, was so informed; and the recital in its decree and the provision in its mortgage, above quoted, foreclose any doubt as to its knowledge. It admits it had notice of the complainant's mortgage from the public records, and information *Page 275 
from the recital in the mortgage that the houses were on the plot which were to be released upon the payment of $5,000 for each house with land of a frontage of fifty feet by at least one hundred feet deep; the only thing it lacked in information was the location of the houses on the plot, and as to that, it was put on inquiry. "Whatever puts a party upon an inquiry, amounts in judgment of law to notice." Hoy v. Bramhall, 19 N.J. Eq. 74; Ibid. 563; Haslett v. Stephany, 55 N.J. Eq. 68; Majewski
v. Greenberg, 101 N.J. Eq. 134. Had the Peoples Banking and Trust Company, when it took its mortgage, gone upon the premises, it would have discovered, as did the solicitor of the complainant, that more land was needed to accommodate the dwellings, the garages and curtilages, than the narrow strip of the part of lot 38 afforded. It chose not to inform itself; it elected not to know. Its claim that it rested entirely upon the record and assumed that the five houses were within the description of the mortgage is inadmissible; had it carefully read the description of the narrow strip and the provision for releases it would at once have been informed that accommodations were lacking. However, it understood that its mortgage was second to the complainant's $25,000 mortgage on five houses with appropriate curtilages somewhere on the plot; where, was of no importance to it when it took its mortgage, and it is quite as immaterial now as an objection to reformation. Gale v. Morris,30 N.J. Eq. 285.
Reforming the description of the first mortgage by giving the five houses adequate curtilages will not deprive the second mortgagee of security it would have known it did not have had it looked, or looking only to the record, had it thought. The equity of the first mortgagee thus established, falls upon the second mortgagee with notice as an equitable imposition. Setting the first mortgagee right may be a disappointment, but not a prejudice, to the second mortgagee.
The Peoples Banking and Trust Company also contends that the complainant's assignor was guilty of negligence, and upon familiar equity principles relief should be denied. The mortgage was prepared by Delmore's representative, the *Page 276 
same attorney who had shown Arace the five dwellings upon which the loan was to be made. The attorney thought the "second tract" in the Delmore deed, with one of its courses along LaSecla Place, described the intended mortgaged premises, and laboring under that impression had the mortgage prepared by one of his clerks. It could hardly be said that Arace, a layman, should have noticed his inadvertence. Counsel pressing the point, himself did not observe it when reading the record of the mortgage, with the information before him that the strip, part of lot 38, had upon it five dwellings, subject to release, each with land fifty feet front and not less than one hundred feet in depth. All mistakes are due to some form of imperfect circumspection, but these frailties in human action do not connote carelessness, nor does carelessness in its lesser degrees import that measure of negligence which prompts a court of equity to remain passive. Documents which, through mistakes of draftsmen, fail to express the intention of the parties, typical in the instant case, are constantly reformed in equity. If ideal care were the price of reformation there would be few sales. The early case ofWintermute's Exrs. v. Snyder's Exrs., 3 N.J. Eq. 489, is instructive in this equitable remedy.
Counsel relies on Rutgers v. Kingsland, 7 N.J. Eq. 178,
where the doctrine that equity will refuse aid to the negligent was addressed to relief against creditors and innocent purchasers without notice. The observation did not include creditors and purchasers alive to both the mistake and the inattention that occasioned it, who seek to profit by the misfortune. The court of appeals sustained the decree on other grounds. Ibid. 658.
Counsel also cites Graham v. Berryman, 19 N.J. Eq. 29, where the chancellor refused to relieve a purchaser from her mistake in the purchase price of merchandise mistakenly, if not fraudulently, inventoried and appraised by the vendor, because, by ordinary prudence, she could have discovered the mistake, that is, she herself could have made the inventory and appraisement. The court of appeals reversed (sub nom. Berryman v. Graham,21 N.J. Eq. 370), holding, in substance, that if the false appraisement *Page 277 
had been the result of mutual mistake, equity should grant relief.
The failure of the complainant's assignor to detect the misdescription is not of that degree of negligence of which the bank, with notice of the mistake, can have an advantage.
Another objection to relief is that the complainant ratified the mistake by subsequently taking a new mortgage. If there be legal merit to the point, it suffers in the facts. There was an adjustment between Delmore and the complainant which resulted in the giving of an $18,500 mortgage on the plot as additional security, but that occurred before the mistake was discovered.
The final protest registered is that the Desirable Building and Loan Association holds a mortgage on the "first tract" comprising lots 1-2-3 and 39, and is a necessary party, and consequently the suit is not ripe for a decree. The defense was not pleaded. Reformation, however, will not disturb this mortgage; it will be subject to it. The lien of its mortgage not being affected, the association is not an essential party to the suit.
The description in the complainant's mortgage will be reformed to add to the strip a depth to the lots on LaSecla Place sufficient to include the garages, and also a curtilage to accommodate the house on the corner of Schneider avenue and LaSecla Place. The former is sufficiently definite from the survey, and as to the latter, if counsel cannot agree, it will be referred to a master to determine upon inspection and proof. It would appear that the principal of complainant's mortgage is now $18,500; if there is any question as to the amount, that too will be submitted in the reference. *Page 278