MARGARET RUTGERS *v.* JOSEPH KINGSLAND and others.

If a mortgage is, by mistake as between mortgagor and mortgagee, so drawn as to exclude land which they intended it should include, and the mortgage is recorded as drawn, and the lands not included in it are sold to a *bona fide* purchaser without notice of the mistake; or lands as well those included as those not included in the mortgage but intended to be, are sold together with other lands not intended to be included in the mortgage, subject to such mortgage on a part of them, to a *bona fide* purchaser, without notice of a mistake, the mistake will not be corrected as against such purchaser.

A subsequent purchaser from such *bona fide* purchaser without notice will hold the land not included in the mortgage free from the mortgage, although such subsequent purchaser knew of the mistake; because, by purchasing from him who bought in good faith without notice, he would acquire all his rights and equities.

A subsequent purchaser, *bona fide* and without notice from a first purchaser who had notice of the mistake will hold the land not included in the mortgage free from the mortgage; because his equity would be at least equal to that of the mortgagee.

In July, 1836, Ralph Pomeroy and wife conveyed to David S. Brown, in trust for himself and certain associates, certain lands situated in the township of Belleville, in the county of Essex, containing about 33 acres, with a mill site and mill and dwelling-house thereon for $40,000, subject to a mortgage given to Gerard Rutgers. Brown gave a bond to Pomeroy for $12,000, part of the purchase money, payable in five years, with interest; and to secure the payment of the bond, gave a mortgage to Pomeroy on a part of the said land, particularly describing the said part by courses, distances and landmarks, and as containing six acres, be the same more or less.

In Oct., 1836, in order to relieve the property from the Rutgers mortgage, and enable Brown and his associates to sell, free from incumbrance, all the property except what the mortgage from Brown to Pomeroy covered, Pomeroy, who was in some way interested with Brown, gave to Margaret S. Rutgers, who then held the said Rutgers mortgage, and on which only $5000 was then due, his bond conditioned for the payment of $5000 in one year, with interest; and, on the same day, assigned to the said Margaret the said mortgage given by Brown to him, which assignment contained a proviso that if Pomeroy should pay to the

said Margaret $5000 and interest thereon according to the con.-dition of his said bond to her, the said assignment should be void.  And thereupon the said Margaret gave up the said Rutgers mortgage to be cancelled : and it was cancelled.

In March, 1838, Brown filed a bill against his associates, twenty in all, stating advances made by him in relation to the property, and that the bond and mortgage given by him to Pomery remained unpaid ; and praying an account; and that what may be found due to him may be paid ; and that the mill, fixtures and machinery, together with the land adjoining, may be sold for that purpose.

On the 19th of Oct., 1848, a final decree was made on Brown's said bill for the sale of the whole of said lands, the 33 acres, without prejudice to the interests of any person holding the said mortgage given by Brown to the said Pomeroy, to raise and pay to Brown the sum of $15,826 01, which included the principal and interest then due on the said mortgage.  A *fi. fa.* was accor-dingly issued ; and by virtue thereof, all the said lands, the 33 acres, were sold, subject to the said mortgage, to Charles Mix, who was one of the said associates ; and all the said lands were conveyed to him, subject to the said mortgage, by deed dated April 27, 1839.

On the 28th of August, 1840, Jos. Kingsland recovered a judgment against Charles Mix, for $519 34, on which a *fi. fa.* against goods 'and lands was issued; and on the 10th of Oct., 1840, Wm. Mix recovered a judgment against Chas. Mix for $2867 71, on which a *fi. fa.* against goods and lands was issued. These executions were levied on all the said property described in the said deed to Chas. Mix.

In Feb. 1841, Margaret Rutgers filed her bill to foreclose the said mortgage given by Brown to Pomeroy and by Pomeroy assigned to her, stating, that in Oct. 1836, there was $5000 due to her on the Gerard Rutgers mortgage, and that Pomeroy gave her his bond for the said $5000, and as collateral security there-for assigned to her the said Brown bond and mortgage ; and that thereupon she delivered up the said bond and mortgage to Gerard Rutgers to be cancelled, and it was cancelled ; and stating that the whole $12,000 mentioned in the Brown mortgage was unpaid.

A decree *pro. con.* was taken.   In July, 1842, leave was granted
to the complainant in this suit to strike out the names of Brown
and his wife as defendants in this bill.

A final decree was made in this suit for the sale of the land
described in the Brown mortgage, to raise the money due thereon,
to pay the complainant, Margaret Rutgers, the money due her on
the bond given by Pomeroy to her, and directing that the residue
of the proceeds should be paid into court.   Under the execution
issued on this decree, the sheriff, on the 20th of Dec., 1842,
struck off the said premises to the complainant, Margaret Rut-
gers, for $1000.   No deed was made.

On the 18th of Jan'y, 1843, the sheriff, under the said execu-
tions in favor of Jos. Kingsland and William Mix against Chas.
Mix, sold all the right title and interest of Chas. Mix in the
said lands to Jos. Kingsland, for $500 ; and thereupon the sher-
iff made a deed to said Kingsland of all and singular the said
lots of land and premises, in as ample a manner as by virtue of
the said executions he could convey the same.

On the 3d of Feb., 1843, Margaret Rutgers filed a supple-
mental bill, stating among other things, that Brown, in making
the said mortgage to Pomeroy, (assigned to her), intended to em-
brace in it the dwelling-house, curtilage and appendages and
other adjoining lands.   That before and at the execution and
delivery of the said Brown mortgage it was expressly understood
and agreed that it should embrace the said dwelling-house, &c.,
and that it was executed and delivered by Brown and wife, and
received by Pomeroy upon such intention, agreement and under-
standing.   The bill then states what it claims to be the *boun-
daries* intended in this mortgage ; and states that directions were
given to the scrivener who drew the mortgage which would have
embraced the said dwelling-house, &c.   It states what it claims
to be the mistake to be the omission of a certain course and dis-
tance ; and that the said mortgage was executed, delivered and
received under the mistaken idea and impression that the descrip-
tion therein given contained the course and distance so omitted.
It states that by the extension of a certain line about two chains
the next course and distance would embrace the dwelling-house,
&c., so intended to be embraced.   That the complainant, the

said Margaret, accepted the said bond of Pomeroy and the assignment of the said Brown mortgage upon the representation of the said Brown and Pomeroy, and in the full belief and expectation that the said mortgage embraced the land and premises as so intended to be embraced ; and that she would not otherwise have accepted the same, or delivered up to be cancelled the said bond and mortgage to Gerard Rutgers. That Brown made and delivered the said bond and mortgage to Pomeroy with the full knowledge and consent of the said Chas. Mix and others for whom Brown held the said lands in trust ; and that the said Chas. Mix knew, when the said bond and mortgage were given to Pomeroy, that it was intended, agreed and understood by and between Brown and wife and Pomeroy that the said mortgage should embrace the said lands and premises so including the said dwelling-house, &c. This bill then states the said bill filed by Brown in 1830, to which the said Mix was a defendant ; that the said bill stated that the said mortgage embraced the said dwelling-house and its appurtenances ; and that the said Charles Mix well knew it so alleged. It states the decree in that suit, and the execution issued thereon, and the sale to the said Charles Mix. That Charles Mix, when he bought at that sale, knew that the said decree and execution recognized and stated that the mortgage to Pomeroy was a lien on the said dwelling-house and appurtenances ; and that Mix has often declared that it did so.

This bill then states the judgments and executions of Jos. Kingsland and William Mix against Chas. Mix, under which levies were made on the said land and premises so conveyed as aforesaid to Chas. Mix, (except such parts thereof as the said Chas. Mix had sold and conveyed before the recovery of the said judgments,) subject to the lien of the Brown mortgage ; and the sale of the said lands, except as aforesaid, to Jos. Kingsland ; and that the land embraced, or intended to be embraced in the said Brown mortgage, was included in the land so sold to Kingsland.

It states that Kingsland and William Mix well knew, had heard, and had reason to believe, when their said judgments were entered and their executions issued, and when the said lands were advertised and struck off, and before the deed to

Kingsland was delivered, that the said Brown mortgage embraced, and that it was intended, agreed and understood to embrace the said dwelling-house, &c.

That this complainant, (Margaret Rutgers), was informed of the mistake in the said Brown mortgage, for the first time, after the said land and premises had been struck off to her under the said execution in her behalf issued out of this court; and that neither she nor Pomeroy, Brown and wife, Kingsland, Charles or Wm. Mix, or any other person, to the knowledge of the complainant, had any idea or impression that any such mistake as assigned had been made in the said Brown mortgage; or that the said dwelling-house, &c. were excluded or excepted from the lien thereof, until the decree of this court in favor of this complainant and the advertisement under the execution issued thereon.

That, immediately after the said mortgaged premises were so struck off to the complainant, she was informed that the said Chas. and Wm. Mix and J. Kingsland set up and pretend that the said mortgage does not embrace the said dwelling-house, &c.

The bill prays that the lands and premises so intended, agreed and understood to be embraced in the said Brown mortgage may be sold for the payment of such sum as may be due her the said Margaret, and for foreclosure, &c.; and that the decree and execution already made in this suit, and the sale thereunder, may be set aside and for nothing holden, or that such further decree as &c. may be made, instead of the decree already made; and particularly that this court may, by its decree, ascertain, determine and define the land and premises so intended, agreed and understood to be embraced in the said Brown mortgage; and that the mistake before set forth may be corrected, and for further relief.

Jos. Kingsland put in his answer to the bill.

He therein says that he has been informed and believes, that an execution issued on the decree on the original bill of the complainant and that the sheriff advertised the said mortgaged premises for sale, and on or about Nov. 28, 1842, the said premises were struck off by the sheriff to the complainant, for $1000, she being by her agent the highest bidder.

That he is informed and believes and expects to be able to prove that the said agent of the complainant knew or was informed, before the said sale, that the said dwelling-house, &c. were not included in the said mortgage.

He denies that when his judgment was entered against Charles Mix, or when execution was issued thereon, he knew, or had been informed, that the said mortgage assigned to the complainant embraced or was intended, agreed or understood to embrace the said dwelling-house, &c.; nor had he any information that such a claim was made or intended to be made until the day of sale by the sheriff, when he made his purchase as aforesaid, and after the premises were struck off to him. That he does not know or believe that the said Wm. Mix, who is the partner of the said Chas. Mix, prior to the said purchase by this defendant, had any knowledge or notice that the said dwelling-house, &c. were intended or agreed or understood to be embraced in the said mortgage.

That he is advised and insists, that he is well entitled to have and claim as against the complainant the said dwelling-house, &c., and all the interest and estate of the said Chas. Mix, not included in the premises described in the said mortgage, which were purchased by him at the said sheriff's sale, and to hold the same by virtue of his said purchase and deed. And he insists that the said dwelling-house, &c. claimed by the complainant are not included within the premises described in the said mortgage, and that the said mortgage is no lien thereon, and also that the said house and adjoining lands are free and clear from all the mortgages in the said supplemental bill mentioned to be held by Gerard Rutgers at the time of his death, they having been cancelled of record, at or about the time the said Brown mortgage was given to Pomeroy ; and ought not now to be set up to injure and defraud this defendant as against him, because he had no knowledge or notice prior to his said purchase and sheriff's deed of any pretended or alleged mistake in the said mortgages.

The cause was heard on the pleadings and evidence.

*A. C. M. Pennington* and *W. Pennington* for the complain-

ant.  They cited 1 *Story's Eq. Jur.*, sec. 165, 411, note, 416; 2 *Ib.* page 1502; 2 *Fonbl. Eq.*, 414, 417.

R. *Van Arsdale* and *A. Whitehead* for the defendants, cited 1 *Story's Eq.* sec. 144, 146, 152; 1 *Ves. Sen.*, 318; 8 *Bingham*, 244.; 21 *Eng. C. L.* 288; 1 *Fonbl. Eq.*, Ch. 3, sec. 3; *Sugd. on Vend.*, 42; .*Elm. Dig.*, 87, sec. 40; 4 *Halst. Rep.*, 193; *Halst. Dig.*, 627; 1 *Story's Eq.*, sec. 403, 409, 410; 10 *Wend.*, 180; *Greenl. Ev.*, 315; 10 *Mass. Rep.*, 244; 1 *Ib.*, 68; 3 *Wils.*, 276; 12 *John. Rep.*, 427; 1 *Caines Rep.*, 358; 1 *Ves. Jun.*, 141; 2 *Bro. Ch.*, 219; 4 *Ib.*, 514; 7 *Ves.*, 217; 1 *John. Ch.*, 279, 425; 3 *Paige's*, 94; 1 *Ves. and Beam.*, 378.

THE CHANCELLOR.  If a mortgage is by mistake, as between a mortgagor and mortgagee, so drawn as to exclude lands which they intended it should include, and the mortgage is recorded as drawn, and the lands not included in it are sold to a *bona fide* purchaser without notice of the mistake; or lands, as well those included as those not included in the mortgage but intended to be, are sold together with other lands not intended to be included in the mortgage, subject to such mortgage on a part of them, to a *bona fide* purchaser without notice, the court could not, I think, as against such a purchaser, correct such a mistake.

A subsequent purchaser from such *bona fide* purchaser without notice would hold the lands not included in the mortgage free from the mortgage, although such subsequent purchaser knew of the mistake; because, by purchasing from him who bought in good faith without notice, he would acquire all his rights and equities.

A subsequent purchaser *bona fide* and without notice from a first purchaser who had notice of the mistake would hold the lands not included in the mortgage free from the mortgage; because his equity would be at least equal to that of the mortgagee.

To apply these principles: if Charles Mix had no notice of the mistake when he bought under the decree of Brown against Mix and others, the complainant cannot succeed in any event. Had he such notice?  It is contended that as he was one of the

associates for whom Brown, the mortgagor, acted as trustee and as president of the association, he is, therefore, chargeable with the same knowledge Brown had that certain other land was intended to be covered by the mortgage. I have strong doubts whether this position can be maintained. Actual notice is the notice required. I do not see that his being one of a number of associates interested in the property is sufficient to charge him with actual notice that certain other land was intended to be included in a mortgage given by the trustee who held the title for the associates. The property was advertised to be sold, at public sale, under a decree of this court. The mortgage was on record. It was a sale at which any person might buy, and at which the property might be sold free from any objection or influence growing out of a mistake as to the quantity included in the mortgage ; for no means were taken to apprise the public, at that sale or before, of any mistake in the mortgage. Clearly, if, under such circumstances, property be sold to a person having no knowledge of the alleged mistake in the mortgage, he would hold free from the mortgage. If the case is to turn on the ground that the purchaser at that public sale was Charles Mix, one of the associates, and on the ground of his having notice, the proof of such notice should be full and unequivocal. Now the most that can be said as to notice by him is, that he supposed that the mortgage covered the additional land claimed under it; for, knowledge of what is said to be the mistake in the mortgage was not, it seems, discovered by any body till long after this public sale at which Chas. Mix bought the property.

But the mortgage was recorded. Mix, as well as all others who thought of purchasing at the sheriff's sale, must be supposed to have examined the record, to see what the mortgage covered. The mortgage had been given two and a half years before. No mistake in it had been set up by the mortgagee. And Mix was at liberty to suppose that the mortgagee knew what the mortgage covered. Certainly, in reference to all bidders not connected with the transaction and having no actual notice, the property was to be sold subject only to the mortgage as it appeared on record.

12

And if Mix, before examining the records, supposed that the mortgage covered the dwelling-house, yet, when the record informed him it did not, his former supposition would not charge him with a notice of a mistake in the mortgage; nor with notice or knowledge that the omission of the dwelling-house in the mortgage was made under such circumstances as would call for a reform of the mortgage as against a purchaser at that sale.

If the case made by the proofs and the principles applying to it could carry us beyond this, the next question would be, whether notice to Kingsland was necessary, and if so, at what time notice to him was necessary. He bought the property at sheriff's sale on executions against Charles Mix.

It was contended, that it was not necessary that Kingsland should have notice, he being only a judgment creditor in one of the judgments under which the land was sold to him at that sale; and that, if notice to him was at all necessary, notice at any time before the property was conveyed to him by the sheriff was sufficient.

This involves the construction of Sec. 5 of the " Act to Register Mortgages," *Rev. Stat.* 658, which provides, that every mortgage shall be void against a subsequent judgment creditor or *bona fide* purchaser or mortgagee for a valuable consideration not having notice thereof, unless such mortgage shall be acknowledged or proved according to law, and recorded or lodged for that purpose at or before the time of entering such judgment, or lodging for record the deed or mortgage to such subsequent purchaser or mortgagee.

If the notice contemplated by this Sec. must be prior to the entry of the judgment, and this, it appears to me must be the true construction of the act, 4 *Halsted's Reports*, 193, the complainant could not succeed, if all other difficulties were removed, unless he could show that Kingsland had notice of the alleged mistake in this mortgage prior to the entry of his judgment.

A case of the character of the one now before the court was not, probably, in the contemplation of the Legislature. The leading object of the act, no doubt, was to provide that a judgment entered should be prior in lien to a mortgage before given, unless the mortgage was recorded prior to the entry of the judg-

ment, or unless the judgment creditor had notice of the mortgage.

In this case there was a mortgage recorded before the entry of the judgment. The question is not, whether the mortgage, as recorded, is good against the judgment; there is no doubt about that; but whether the judgment is not good against any subsequent incorporation into that mortgage of additional land, covered by the judgment, which, as between the parties to the mortgage, might be deemed to be bound by it on the ground that such additional land was intended by the parties to the mortgage to be included in it.

The question is : after a judgment entered, can a recorded mortgage be declared, as against the judgment creditor, to cover more land than the recorded mortgage covers, on the ground that as between mortgagor and mortgagee it was intended and supposed to cover more.

It seem to me that to answer this question in the affirmative would be to allow too great indulgence to the negligence of parties. As to third persons acquiring subsequent liens on property, the record is their proper resort for information, and they must be permitted to rely on it with confidence. *Halst. Dig.* 637.

If a prior mortgage recorded does not, by mistake between the mortgagor and mortgagee, cover all the land it was intended to cover, it is the misfortune, to say the least, of the mortgagee ; and, as between him and third persons acquiring liens, it must be considered his negligence. No good general purpose would be subserved, and much mischief would result, from undertaking to reform such prior mortgages as against subsequent liens. If it could be reformed as against a subsequent judgment creditor, it could be as against a subsequent mortgagee, for they both stand on the same ground.

There is nothing in the proofs, at all events nothing upon which the court can satisfactorily ground a decree for the complainant in a case of this character, to show that Kingsland had any knowledge of any mistake in the mortgage at the time of the entry of his judgment. No such idea as a mistake in the mortgage had ever been suggested by any body at this time. We

may conjecture that Kingsland, from his relation to one or more of these associates, and from conversations he would be likely to hear, may have supposed that the mortgage covered more land, but the record spoke differently.

If, then, the notice contemplated by the Sec. we have referred to must be before the entry of the judgment, the complainant must fail on this ground alone. And I do not see how the express language of the statute can be overcome. Any subsequent notice to him would not answer, for if the judgment is good against all lands not covered by the recorded mortgage, on the ground that the judgment creditors had no notice before the entry of the judgment, a sale under the judgment would be good, though he had notice after the entry of the judgment.

If I could pass this point favorably to the complainant, there are other very serious difficulties in his way. The complainants' counsel seem to have considered that it would not be safe for them to rely on any proof they could offer of notice to Kingsland before the entry of his judgment; or on the ground that a judgment creditor was not entitled to notice; or on the ground that a judgment creditor, purchasing property under his own judgment without notice is not to be considered a *bona fide* purchaser without notice. He caused a notice to be served on Kingsland after the property had been struck off to him at the sheriff's sale under his judgment and that of Wm. Mix. A copy of the notice is in evidence. It was a notice that Margaret Rutgers held a Mortgage given by Brown to Pomeroy, dated Sept. 7, 1836, for $12,000, payable, &c., which was duly acknowledged and recorded, on which all the principal money was due, with interest from Jany. 7, 1839, except $150 of the interest paid since that date; and that the said mortgage embraces a part of the lands levied on under executions in favor of Wm. Mix and the said Jos. Kingsland; and that Margaret Rutgers claims to hold under the said mortgage, and to be entitled to a lien upon six acres or thereabouts of the lands so levied on, including the stone dwelling-house and its appurtenances thereon situated, that is to say upon all that piece or parcel of land, beginning, &c., and giving certain courses and distances, and extending the line, on the course S. 43 deg.

West, two chains and 72 links beyond the point where that line stops in the mortgage, (the distance given in the mortgage, on that course being but five chains, an extension of this line two chains and 72 links would be necessary to obtain the object sought by the bill ;) and that the said Margaret is about to proceed in the Court of Chancery for the enforcing of such lien. This is simply a notice, that by a certain mortgage on record, Margaret Rutgers claimed these boundaries. The record showed that the boundaries given in the mortgage were different. Which was K. to consider right ; the boundaries claimed by the notice, or those given by the record ? And what was K. to understand by this notice ? Was it that the mortgage was not truly recorded ; that the boundaris given in the mortgage itself were the boundaries claimed ? There is nothing said in this notice of the ground on which she claimed a lien according to the boundaries given in the notice. It is not said that she claims those boundaries because it was intended that the mortgage should give them, and that a mistake in the boundaries was made in drawing the mortgage. The notice is simply that under the mortgage she claims a lien according to the boundaries given in the notice. And it would be quite as natural for K., or any one else, to suppose that the meaning of the notice was, that the mortgage, right in itself, was wrongly recorded, as that the mortgage was wrong and did not include all the land intended to be mortgaged. It was certainly not notice of a mistake in drawing the mortgage. And if any purchaser chose, after such notice, to examine the records, and found that the record of the mortgage was different from the boundaries claimed by the notice, and to put himself on the ground that he would risk being bound further than the record went, though the mortgage itself might go further, his danger from what he supposed, and might under such a notice suppose to be the difficulty, that is to say, an incorrect record, differing from the mortgage, would be at an end when it appeared that the mortgage was the same as the record.

It appears to me that the notice, in a case like this, should have stated that the ground on which the boundaries set out in it were claimed was, that they were the boundaries intended

to have been inserted in the mortgage, and that by mistake, the courses and distances were so run as to exclude a part of the land intended to be mortgaged. There is nothing in the nature of the notice given which would authorize Kingsland to refuse to take the deed from the sheriff.

Again, these lands were sold on the *judgment* in favor of Wm. Mix, for $2800, as well as on the judgment of Jos. Kingsland; and no notice was served on Wm. Mix. If the sale, had it been made entirely under his judgment, would have been good against the alleged mistake in drawing the mortgage, it cannot be bad because it was sold at the same time under K.'s judgment also. If the sale would have been made on K.'s judgment alone, yet, K., by his purchase at a sheriff's sale on both these executions, acquired the rights of a purchaser under the judgment of Wm. Mix.

I am of opinion, that the complainant can sell, by virtue of her mortgage, only the lands included within the boundaries therein given.

Decree accordingly.