## HAUGHWOUT and POMEROY vs. MURPHY.

1. *Lis pendens* only take effect from the service of the subpœna. The statute provides that the suit shall not be notice until the filing of the notice required by the statute, but gives no effect to the notice. It only restrains its effect.

2. A person who has contracted for the purchase of land, may compel any one who, after such contract and with notice of it, takes the legal title from the vendor, to perform the contract. The subsequent purchaser, to hold the title against such contract of sale, must be a *bona fide* purchaser, without notice, and must have paid the purchase money.

3. If part of the purchase money remains unpaid after the sale, as to such part such second purchaser is not protected, but it may be claimed by the prior purchaser. But in such case the purchaser will hold the legal title conveyed to him free from any claim under the prior contract, except to the purchase money not paid until after notice of the contract.

4. That a mortgage was given as security for the payment of the unpaid purchase money, is not sufficient to protect such subsequent purchaser. He is only protected as to money actually paid before notice.

5. A delay of two years and a half not accounted for in bringing suit to compel specific performance, is fatal to relief.

---

This cause was argued upon pleadings and proofs.

*Mr. Pitney,* for complainants.

*Mr. Vanatta,* for defendant.

THE CHANCELLOR.

The bill is filed to enforce the specific performance of a contract to convey lands. In September, 1863, A. Boisaubin agreed, in writing, with the complainant, Haughwout, that he would convey to him a tract of land containing twenty-two acres, known as the Spencer Wood, for $200 per acre, and gave Haughwout until March 1st, 1864, to accept the proposition. Haughwout accepted it on the last day of February, 1864. A deed was about this time prepared from Boisaubin to Haughwout for this tract, but for some reason which does not appear, it was not executed or delivered. There is no proof that anything was done by either party in fulfillment of the contract, or to demand its execution by the other, until August 31st, 1865; during this time Boisaubin had publicly, by a placard set up on the tract, advertised it for sale in lots. Lots were sold to several purchasers. And on the 7th of August, 1865, Murphy, the defendant, purchased of Boisaubin for $600, three lots, the property in question in this suit. The conveyance was made and delivered on that day, and $400, part of the consideration, was paid on delivery of the deed; a mortgage for $200, the residue of the consideration, was executed and acknowledged on August 19th, but not then delivered. On the 20th of August, Murphy found that two prior mortgages on the whole tract had not been canceled of record, and went to see Boisaubin about it. Boisaubin said they were satisfied, and he supposed they were canceled. He promised to see to it, and handed to Murphy $400, which he insisted on his taking and keeping until these mortgages should be canceled of record. He found, upon inquiry, that releases of these three lots from the two mortgages had been properly executed, but, by some inadvertence, had not been recorded, and brought a note, dated August 29th, from Mr. Dalrimple, his counsel, to Murphy, stating that the mortgages were canceled and released. This note was delivered to Murphy by Boisaubin on the evening of the 29th or 30th of August, when the $400 was handed back to Boisaubin, and the next

day Murphy delivered to him the mortgage for the $200. About these dates there is some uncertainty, and some discrepancy in the evidence of both Murphy and Boisaubin, and especially between their evidence in this suit, and in that heretofore brought by Haughwout against Boisaubin. But, upon a careful examination of the whole, I am satisfied that it establishes the facts as I have stated them. On the 31st of August, Haughwout filed a bill in this court against Boisaubin, to compel a conveyance of the whole tract, but did not make Murphy a party. A notice of *lis pendens* was filed in the county clerk's office, September 1st, 1865. It does not appear that any subpœna was issued or served. It is from the service of the subpœna only that *lis pendens* has effect. *Murray* v. *Ballou*, 1 *Johns. Ch. R.* 576. The statute (*Nix. Dig.* 112, § 57,) does not give any effect to the notice required to be filed by it, but declares that the suit shall not be notice until such filing.

Murphy had no notice of the contract with Haughwout at the time of the conveyance and payment of the $400. But it is contended that he had power to retain the $400 given to him by Boisaubin, and that, waiving such power, he paid it back to him after he had notice of Haughwout's claim. The $400 handed to him by Boisaubin was for a specific purpose; it was a pledge that Boisaubin would free the property from the mortgages. It was not given to refund the purchase money, or to rescind the sale and take back the property. Like any other pledge, it must be delivered up when the purpose for which it was given was accomplished. Murphy had no claim or lien upon it for any other object, whether connected with the purchase or not. He was bound, both in conscience and in law, to return it, and the contract with Haughwout would have been no defence at law to a suit for this $400, any more than if a watch or diamond had been pledged.

Murphy then must be held to have taken his title, and to have paid $400, being two-thirds of the consideration money, before any notice of the claim of Haughwout, or the con-

tract on which that claim was founded. There is no question, but that a person to whom the owners of land have contracted to sell it, may compel any one, who, after such contract and with notice of it, takes the legal title from the vendor, to perform the contract. Such person, to hold the title against such contract of sale, must be a *bona fide* purchaser, without notice, and must have paid the purchase money. If part remains unpaid after the sale, as to such part he is not protected, but it may be claimed by the prior purchaser. But in such case, as was held by Justice Story in the important and well considered case of *Flagg* v. *Mann et al.*, 2 *Sumner* 566, the purchaser will hold the legal title conveyed to him free from any claim under the prior contract, except to the purchase money not paid until after notice of the contract.

This narrows the case to the claim of the complainants to have the $200, secured by the mortgage, appropriated to their claim. It is held that a *bona fide* purchaser without notice is only protected so far as the purchase money is actually paid before notice. That securities have been given for the payment is not sufficient to protect him. The lien of the purchaser under the prior contract would be a sufficient defence to those securities, and the grantee ought not to pay them. In this case the mortgage itself was delivered to Boisaubin after the notice in the conversation with Dalrimple. I consider it very doubtful whether the vague notice from Dalrimple was sufficient to put Murphy on his inquiry, but I shall assume that it was sufficient for the purpose of this decision.

But the complainant has been guilty of laches in bringing his suit for the lots in question in this cause. On the thirty-first of October, 1865, he had notice that Murphy had purchased these lots, and claimed to hold them, and that as to them Boisaubin could not give a legal title. He did not, so far as appears, make any demand on Murphy, until March 24th, 1868, and did not file his bill until after that. He suffered two years and a half to elapse, in which Murphy

did not know whether he would be called on to convey these three lots. In the mean time the mortgage became due, and Murphy paid it. It is at least doubtful whether Murphy could have offered a legal defence to it, for the title conveyed to him was good, unless Haughwout should bring suit for specific performance.

It is the doctrine of equity that specific performance will not be decreed in favor of a complainant who has been guilty of laches, either in performing his part of a contract, or in applying to the court for relief. *Fry on Spec. Perf.* §§ 730, 732, 736, 737. Lord Chancellor Cranworth says, in *Eads* v. *Williams,* 4 *DeG. McN. & G.* 691 : " Specific performance is relief which this court will not give unless in cases where the parties seeking it come promptly, and as soon as the nature of the case will permit." And he quotes with approbation, *Watson* v. *Reid,* 1 *Russ. & M.* 236, in which Sir John Leach, considered a delay of twelve months unaccounted for, a ground to refuse relief; and *Southcomb* v. *The Bishop of Exeter,* 6 *Hare* 213, in which Vice Chancellor Wigram held, that delay in bringing suit from February, 1842, to August, 1843, was fatal to relief.

Murphy might have been made a party to the bill against Boisaubin ; he was a proper, if not a necessary party ; and if his deed was not known to Haughwout at the filing of the bill, he had notice by the filing of the answer in October, 1865, stating the giving of this deed, and might then have amended his bill so as to make Murphy a party, or he might then have commenced suit against him. The final decree in that suit was in March, 1867, and this suit was not commenced until more than a year after that. This delay is unaccounted for ; there does not appear to exist any good reason for it ; it is mere laches.

The only claim that exists is for the $200, and Murphy might presume that all damages sustained by not conveying these lots would be adjusted in the suit with Boisaubin, and that a suit would not be brought against him for that amount. No claim was made on him for any deficiency of Boisaubin

in paying the damages, nor does it appear by any evidence that any such deficiency exists which would absorb this $200, if it had not been paid.

In addition to these facts, this mortgage for $200 was bought up by Davidson, a partner of Haughwout, by the advice and under the direction of Haughwout's counsel, and at his request; I do not doubt but with Davidson's own money, but for the benefit of Haughwout. It was held and controlled by the counsel of Haughwout in such manner as leaves no room to doubt that it was so bought and controlled for his benefit alone. The mortgage was assigned to Davidson as collateral to the principal mortgages which he purchased at the same time, for which he paid only $5800, being the amount due on them. Murphy paid this $200 to Haughwout's counsel, nominally for the use of Davidson, but it really went to Haughwout, who paid Davidson only the $5800 paid by him for the principal mortgages. The evidence is somewhat confused, but I am convinced that the amount of $200, secured by this mortgage, was actually received by Haughwout. And it would be highly inequitable, under such circumstances, to allow him, in any way, to compel Murphy to pay the same a second time.

The bill must be dismissed.