EXECUTORS OF JOHN B. GALE, deceased,

*v.*

DE WITT C. MORRIS.

1. An equitable mortgage may arise from non-payment of purchase money, a deposit of title-deeds, or an unsuccessful attempt to make a valid mortgage deed.

2. A person who acquires a legal title, with notice that the equitable title is in some other person than his grantor, will be decreed to hold the legal title for the benefit of the equitable owner.

3. A deed or mortgage may be reformed against a subsequent purchaser or mortgagee who acquires his rights with notice of the equities of the person seeking reformation.

4. Constructive notice, flowing exclusively from matters of record, can never be construed to be more extensive than the facts stated on the record.

---

On final hearing on bill, answer and proofs.

Gale's executors *v.* Morris.

*Mr. Joseph B. Alward,* for complainants.

*Mr. Peter Bentley,* for defendant.

THE VICE-CHANCELLOR.

This suit has two objects, first, to reform the mortgage on which it is founded so as to raise the estate conveyed by it from a life-estate to a fee; and, second, to condemn the mortgaged premises to sale for the payment of the mortgage debt. The mortgagor admits he agreed to mortgage the fee, and that the conveyance of a less estate was a mistake. As between the original parties this disposes of the question of reformation. The complainants are entitled to a decree making the mortgage conform to the intention of the parties to it. The dispute in the case is between the complainants and a second encumbrancer whose mortgage embraces the fee. She insists, while it is entirely equitable the complainants' mortgage should be reformed against the mortgagor, no decree should be made affecting her rights.

The complainants' mortgage is for $12,000, bears date May 20th, 1873, and was recorded the same day, and that of the defendant is for $4,000, and bears date December 27th, 1875. Both were drawn by and executed before the father of the mortgagor, who is a member of the bar of New York. The complainants loaned the money for which theirs was given at the time of its execution, and that of the defendant was given to secure a pre-existing debt. The defendant was informed by the mortgagor's father, when her mortgage was delivered, that the mortgaged premises were then considered to be worth $30,000; that they were already subject to a mortgage of $12,000, held by the complainants, and that hers would be subsequent to that. The funds loaned by the complainants were held by them as the executors of John B. Gale, deceased, and the mortgage was made to them in their representative capacity. In preparing it the draughtsman erased the word " heirs," wherever it was used in the printed form to designate the heirs of the mortgagees, and

substituted "successors." His object, he says, was to cast the fee upon such persons as might thereafter succeed the complainants as the representatives of the testator. The proofs do not show whether the complainants' mortgage was recorded in full, or merely an abstract of it.

It is clear the complainants have no legal mortgage upon the fee. Their right to relief against the resisting defendant depends entirely, in my judgment, upon their ability to establish two propositions : first, that by their contract with the mortgagor they became mortgagees in equity of the fee; and, second, that the defendant took her mortgage with notice of their equities.

An equitable mortgage will arise from the non-payment of purchase-money (1 *Hill. on Mortg.* 660); and it may also be created by a deposit of title-deeds (*Griffin* v. *Griffin*, 3 *C. E. Gr.* 104; *Brewer* v. *Marshall*, 4 *C. E. Gr.* 537); but a mere parol promise to make a mortgage for money lent will not create a lien. 4 *Kent's Com.* 154. It has also been held that an equitable mortgage may be created by an unsuccessful attempt to make a valid mortgage deed, or to appropriate specific property to the discharge of a particular debt. 2 *Story's Eq. Jur.* § 1020, *note*, referring to *Peckham* v. *Haddock*, 36 *Ill.* 38, and *McClurg* v. *Phillips*, 49 *Miss.* 315; *Lead. Cas. in Eq.* (4 Am. ed.) 954. The soundness of this view seems to have been recognized by the court of errors and appeals in *Wheeler* v. *Kirtland*, 9 *C. E. Gr.* 552. The infirmity sought to be cured in that case was identical with that existing in this mortgage, but there being no proof showing that it had been agreed the mortgage should embrace the fee, the court declined to discuss how far an equitable lien might be established against creditors, but it was distinctly declared that an equitable mortgagee who pays full consideration when his mortgage is given, is entitled in equity to be regarded as a *bona fide* purchaser. And it would seem to be entirely clear, under the rule so manifestly just established in *Phelps* v. *Morrison*, 10 *C. E. Gr.* 538, that a mortgagee who loans his money in good faith,

Gale's executors *v.* Morris.

upon a mortgage utterly worthless as a deed, because executed by a wife alone, will be entitled to the protection against creditors granted to a *bona fide* purchaser or mortgagee by the fifteenth (formerly the sixth) section of the statute of frauds (*Rev.* p. 447). The distinguishing doctrine of that case is, that it puts equitable titles on an equality with legal titles, and declares that the right shall be protected regardless of mere matters of form. Had the complainants been purchasers of the fee for full value, and had the defendant subsequently accepted her mortgage with express notice of the conveyance, though without information as to the quantity of the estate conveyed, it is obvious, I think, her present contention in that condition of affairs would be so glaringly unjust as to be unworthy of consideration in a court of conscience. The difference between the fallacy of her present contention and that in the case supposed, rests rather in the prominence with which it stands out in one case and not in the other, than in principle. In my view, according to both authority and principle, the complainants are mortgagees in equity of the fee of the mortgaged premises.

This brings us to the question, Did the defendant accept her mortgage with notice of the complainants' equities? There can be no doubt about the effect of such notice. Justice will not permit a person acting with full knowledge of the true situation, to hold against another a hard advantage he has obtained on a point of strict law. A deed may be reformed against a subsequent purchaser or mortgagee who acquires his rights with notice of the infirmity sought to be cured. *Rutgers* v. *Kingsland*, 3 *Hal. Ch.* 178; *S. C. on appeal*, *Ib.* 658. Where the equitable and legal titles to land are held by different persons, a purchaser of the legal title, who purchases with knowledge of the rights of the equitable owner, will be decreed to hold the legal title for the equitable owner, and may be required to convey to him. If he pays anything for it, with notice that the equitable owner has already paid the purchase-money agreed upon, he will be compelled to convey without reim-

15

bursement. *Weller* v. *Rolason*, 2 *C. E. Gr.* 13. Having
expended his money for a thing he knew had been pur-
chased and paid for by another, he can make no just claim
to indemnity. Such a claim could not be sanctioned with-
out giving at least partial effect to his meditated wrong. In
order to do justice, the court will exert its power in aid of
equitable rights, even to the extent of enjoining the devisees
of a mortgagor from taking advantage of a clear mistake,
whereby less land was conveyed than the parties intended,
and that, too, after it is impossible to correct the mistake
in consequence of the sale of the mortgaged premises under
a foreclosure. *Waldron* v. *Letson*, 2 *McCart.* 126. If merely an
abstract of complainants' mortgage was recorded, the record
would not show what estate was granted, the statutory
direction being simply that the "names of the mortgagor
and mortgagee, the date of the mortgage, the mortgage
money and when payable, and the description and bounda-
ries of the land," shall be entered. (*Rev.* p. 705, § 17.) And
if it was recorded in full the record would afford notice of
nothing beyond what its terms import, *Wilson* v. *King*, 12
*C. E. Gr.* 374; *Farmers Bank* v. *Bronson*, 14 *Mich.* 361. A
complete transcription of this mortgage on the record would
merely have shown that it conveyed a life-estate. If the case
stood simply on such notice as must be imputed to the defend-
ant by force of the registry acts, *Wilson* v. *King* would be
an adjudication directly in point, and unquestionably fatal
to the complainants' claim. It is undoubtedly true, as is
declared in that case, that mere constructive notice of the
existence of a mortgage, with no notice of the estate con-
veyed by it, will not be notice that the mortgage embraces
a fee, when, by its terms, it conveys only a life-estate. Con-
structive notice, flowing exclusively from matters of record,
can never be construed to be more extensive or broader
than the facts stated on the record.

The rule laid down in *Wilson* v. *King*, I understand to be
this : That where knowledge is imputed to a person by
mere force of law, without evidence of actual knowledge, he

can only be held to know what the record shows, and not what it does not show. But in this case the proof shows actual notice as extensive and full as language could convey it. The defendant was told, before the delivery of her mortgage, that the complainants held a prior mortgage for $12,000, and that her's would be subsequent to that. This was a plain notification that the complainants' mortgage was understood to embrace the same quantity of estate that her's did—for her lien was to stand subsequent to that of the complainants'—and that she took the pledge of this property for her debt, subject to a prior pledge to the complainants for their debt. She knew it was the understanding of all parties that her position was to be subordinate to that held by the complainants, and, having taken it with such knowledge, equity will not allow her to dislodge the complainants and usurp their position. Full actual notice is the feature of this case, which, both in reason and justice, distinguishes it most conspicuously from *Wilson* v. *King*, and renders the rule, justly applied in that case, inapplicable to this. It is true an attempt was made in that case to show actual notice, but the proof was manifestly insufficient, and the complainants' case, therefore, stood exclusively on such notice, and such only, as was given constructively by the fact of registry. Actual notice did not exist, and the notice given, constructively, by the record, was of a mortgage on a life-estate only. The mortgage in that case was recorded in full, for the Chancellor says : " The mortgage, by its record, purported to convey only an estate for the life of the mortgagee." Here actual notice of a prior mortgage, together with a plain warning to the defendant that the mortgage to be made to her would be subject to that, is conclusively proven. Viewed in the most favorable light to the defendant, this notice was, unquestionably, amply sufficient to put upon her the duty of inquiry, and to render her chargeable with all she would have learned by doing her duty. It is not necessary to show the defendant knew there was a mistake—at the time she took her mortgage no one

knew a mistake had been made—it is sufficient to show she knew a prior mortgage had been given to the complainants, which, by the understanding of the parties, was to have priority over hers.

In my judgment, the fact is fully established that the defendant took her mortgage with full notice of the complainants' equities, and they are, therefore, entitled to a decree of reformation against all the defendants.