76 N.J. Super. 124 (1962)
183 A.2d 865
MORRIS SCULT AND CHARLES BROMBERG, TRADING AS BROMOR ASSOCIATES, PLAINTIFFS,
v.
BERGEN VALLEY BUILDERS, INC., A NEW JERSEY CORPORATION; ALBERT E. WASSBERG, INC., A NEW JERSEY CORPORATION; THE STATE OF NEW JERSEY; GLIDE-AWAY DOOR CONSTRUCTION CO., INC., A NEW JERSEY CORPORATION; WALTER T. HERTEL; DORIS HERTEL; BENNO FINKELSTEIN AND SELMA FINKELSTEIN, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided August 15, 1962.
*127 Mr. Allan S. Gutfleish (Messrs. Weitz & Gutfleish, attorneys), for plaintiffs.
Mr. Raymond G. Betsch for defendants.
PASHMAN, J.S.C.
On November 10, 1961, plaintiffs Morris Scult and Charles Bromberg, trading as Bromor Associates (hereafter Bromor), instituted an action to foreclose a certain real estate mortgage covering property in New Milford, New Jersey. The matter proceeded in a normal fashion  some of the defendants filing answers, others defaulting  and on April 5, 1962 the remaining parties appeared before the court for a pretrial conference. On this date the factual picture presented involved a dispute between the plaintiffs and defendants Walter Hertel, Doris Hertel, Benno Finkelstein and Selma Finkelstein. The substance of the plaintiffs' allegations at the conference was that they had a right, as against these defendants who were the holders of subsequent unrecorded contracts to purchase, to foreclose a mortgage which the plaintiffs held dated July 21, 1960 and recorded on July 26, 1960. The Hertels and the Finkelsteins disputed the validity of the plaintiffs' mortgage and stated that in any event said mortgage had been discharged by either a subsequent mortgage covering the properties in question or a conveyance of a certain tract of land in Piermont, New York. The issues reserved for disposition at trial were: (1) who is entitled to possession of the respective premises in question; and (2) are the plaintiffs entitled to foreclose their mortgage.
It was discovered for the first time on May 3, 1962, which was the date set for the trial of this matter, that the mortgage which the plaintiffs were seeking to foreclose did not embrace all of the tracts which the original parties to the mortgage allegedly intended. A discussion between the court and counsel for the respective parties resulted in an agreement giving the plaintiffs the right to file an amended complaint seeking, in a new count, reformation of the *128 mortgage which it sought to foreclose. The plaintiffs thereafter filed said amended pleading including a request for reformation which the defendants disputed on the ground, inter alia, that they were bona fide purchasers for value without actual notice of any claim of the plaintiffs in or to the tracts purchased by the defendants.
The land which is the subject matter of this litigation consists of four building tracts and was originally purchased by the defendant Bergen Valley Builders, Inc. (hereafter Bergen) from two different grantors in two separate deeds. On July 21, 1960, which was during the initial and formative stages of the development of these properties, Bergen Valley Builders entered into an agreement with the plaintiffs whereby the former obligated itself to the latter on a $28,000 real estate mortgage and promissory note in return for a loan of $25,000 from Bromor. It is this mortgage which the plaintiffs presently seek to foreclose.
The $28,000 mortgage alluded to in the preceding paragraph was drawn by George Dailey, Esquire, who acted as the attorney for Bergen Valley Builders. (It is interesting to note that although the plaintiffs did not retain separate counsel in connection with this matter, Mr. Dailey had represented them in the past in other unrelated transactions.) Mr. Dailey testified, and I find as a fact, that when he drafted the mortgage he included only the description contained in one of the two deeds into Bergen Valley Builders. Although Mr. Dailey attempted to justify his palpable mistake by explaining that he had lost his Bergen Valley Builder file when his office was moved, there can be no excuse for what was obviously more than an insignificant oversight.
The next transaction involving the four tracts occurred on October 24, 1960 when Bergen Valley Builders conveyed the properties to defendant A.E. Wassberg, Inc. (hereafter Wassberg). Mr. Dailey represented both parties in this transaction, receiving remuneration from Bergen Valley *129 Builders for drawing the deed and reimbursement from Wassberg for the recording expenses. As was Mr. Dailey's practice in the previous mortgage transaction with the plaintiffs, no closing statement was drawn nor was a title search or certificate of title given to the purchaser. Strangely enough, the deed covered all four tracts originally purchased by Bergen.
After Wassberg received a conveyance of the land from Bergen, it continued with the development of the properties and on July 10, 1961 entered into a contract to sell one tract to defendants Finkelstein for $27,000, of which $2,700 was immediately paid as a deposit.
A short time after the contract between Wassberg and the Finkelsteins was consummated, a mortgage agreement (including a promissory note) was made between Wassberg and the plaintiffs whereby Wassberg obligated itself to pay $22,400 to the plaintiffs within one year from July 24, 1961, which was the date the said mortgage was executed. This mortgage was recorded on August 4, 1961 and it covered all four tracts.
The next transaction of importance occurred on August 25, 1961, when Wassberg entered into a contract to sell a tract to defendants Hertel for $26,000, of which $2,600 was immediately paid as a deposit. Thereafter the Hertels and the Finkelsteins each paid an additional $2,000 to Wassberg and both moved into the homes which were on their respective tracts  the Finkelsteins on September 25, 1961 and the Hertels on October 6, 1961.
The real difficulty in the instant case arises out of the undisputed fact that the mortgage which the plaintiffs seek to foreclose, that is, the July 21, 1960 mortgage between the plaintiffs and Bergen, does not cover all four tracts. More specifically, that mortgage includes ten feet in the rear of the Hertels' property, approximately two-thirds of the Finkelsteins' property (including part of their home), and the other two tracts. A determination must be made therefore as to whether or not, and to what extent (if at *130 all) the plaintiffs are entitled to reform the July 21, 1960 mortgage. Even if reformation is not warranted or justified, the broad general question of the plaintiffs' rights as against the Hertels and the Finkelsteins still remains.
It is elementary that one claiming or seeking to reform a written instrument must establish his right to the relief sought by proof that is clear and convincing. See, e.g., Stamen v. Metropolitan Life Ins. Co., 41 N.J. Super. 135, 140-141 (App. Div. 1956); and Millhurst, etc., Drying Co. v. Automobile Ins. Co., 31 N.J. Super. 424, 433 (App. Div. 1954). I find that the plaintiffs have satisfied this burden in the case sub judice. To be more exact, it was quite clear from the proofs produced by the plaintiffs that both they and Bergen intended, when the July 21, 1960 mortgage was drawn, that the subject matter of the mortgage would be the four tracts then owned by Bergen. Furthermore, I find as a fact in this connection, that the initial failure to reflect this intention in the mortgage itself is attributable to the mistake of the scrivener, Mr. Dailey.
Absent the existence of innocent third parties whose rights may be adversely affected by a scrivener's mistake "`[w]here an instrument is drawn and executed, which professes, or is intended, to carry into execution an agreement, whether in writing or by parol, previously entered into, but which, by mistake of the draftsman, either as to fact or law, does not fulfill, or which violate the manifest intention of the parties to the agreement, equity will correct the mistake, so as to produce a conformity of the instrument to the agreement.'" Simeone v. Varloro, 107 N.J. Eq. 204, 208 (E. & A. 1930). See also Katchen v. Silberman, 109 N.J. Eq. 613, 614-615 (Ch. 1932); Louis Stern Sons v. Connolly, 95 N.J. Eq. 356, 359 (Ch. 1923); Cochran v. Burns, 91 N.J. Eq. 7 (Ch. 1919); and Coady v. Ciccion, 2 N.J. Misc. 588, 591 (Ch. 1924). Cf., generally, 76 C.J.S. Reformation of Instruments §§ 25h, 28d(2) (1952).
*131 Although the preceding rule regarding reformation based upon a scrivener's mistake may satisfactorily resolve a dispute between the immediate parties to a written document, it loses its appeal when innocent third parties act in reliance upon the contents of the written document which contains, for example, an erroneous description. As our former Court of Chancery pointed out in the very early case of Rutgers v. Kingsland, 7 N.J. Eq. 178 (Ch. 1848), affirmed 7 N.J. Eq. 658 (E. & A. 1851):
"If a mortgage is by mistake, as between a mortgagor and mortgagee, so drawn as to exclude lands which they intended it should include, and the mortgage is recorded as drawn, and the lands not included in it are sold to a bona fide purchaser without notice of the mistake * * * the court could not * * * as against such a purchaser, correct such a mistake." (7 N.J. Eq., at p. 184).
"If a prior mortgage recorded does not, by mistake between the mortgagor and mortgagee, cover all the land it was intended to cover, it is the misfortune, to say the least, of the mortgagee; and, as between him and third persons acquiring liens, it must be considered his negligence. No good general purpose would be subserved, and much mischief would result from undertaking to reform such prior mortgages as against subsequent liens. * * *" (7 N.J. Eq., at p. 187).
Cf. also Schnakenberg v. Gibraltar Savings and Loan Ass'n, 37 N.J. Super. 150, 158 (App. Div. 1955); and Gale's Ex'rs v. Morris, 29 N.J. Eq. 222, 225 (Ch. 1878).
A general investigation of the case law in other jurisdictions which have considered the question of a party's right to reformation where there are intervening rights indicates that:
"The rules that a contract or other instrument will not be reformed as against a bona fide and innocent purchaser, or a subsequent purchaser for a present consideration, but that it is subject to reformation as against subsequent purchasers who obtained their title or lien with notice of the existing equitable right of reformation, or who, for other reasons, are not considered bona fide purchasers, have been applied in many of the later cases.
In a few instances the courts, distinguishing between the reformation of an erroneous description and rectification of an accidental omission of property from a deed conveying property, have said that *132 in the former case reformation sometimes is allowed even as to third persons, but that the case is different as to omissions where the rights of innocent third parties have intervened.

* * * * * * * *
Generally, actual notice on the part of the subsequent purchaser or encumbrancer of the error to be corrected is not necessary in order to permit reformation of the instrument as against him, provided he had constructive notice, or the facts were such as to put him upon inquiry.
The record of an incorrect instrument does not constitute notice of such inaccuracy to a purchaser or encumbrancer, thereby depriving him of any right to protection as against reformation, unless the nature of the inaccuracy is such as to put him upon notice or require him to make inquiry with regard thereto. This rule applies where the instrument identifies an entirely different piece of property than was intended." Annotation, 79 A.L.R.2d 1180, 1184 (1961)
See also Annotations, 102 A.L.R. 825 (1936) and 44 A.L.R. 78 (1926).
One of the most difficult problems presented in the instant case arises out of the simple fact that defendants Finkelstein and Hertel did not pay the full consideration for their individual properties before they received actual notice that what they had purchased might possibly be covered by a superior, outstanding encumbrance, namely, the plaintiffs' mortgage. Thus, it is a fact that the Hertels had only paid $4,600 and the Finkelsteins $4,700 before they were apprised, by the plaintiffs' complaint and subsequent discovery the first day of trial, that the plaintiffs were claiming a prior right to their properties. Furthermore, the defendants have not, to date, paid any consideration beyond the aforementioned figures.
It appears to be fairly well settled in New Jersey that:
"`To be a bona fide purchaser without notice, the defendant must, not only have agreed to purchase without notice of the [plaintiff's] previous agreement, but he must also have actually paid the purchase-money and taken his deed without such notice.' * * *
`Payment or its equivalent of the whole purchase-money is essential to the defense of bona fide purchaser.'" Goldberg v. Levy, 99 N.J. Eq. 634, 635 (Ch. 1926), affirmed per curiam, 101 N.J. Eq. 293 (E. & A. 1927). *133 See also Miller v. Headley, 109 N.J. Eq. 436, 444 (Ch. 1932); Mosher v. Van Buskirk, 104 N.J. Eq. 89, 91 (Ch. 1929); Toplan v. Hoover, 100 N.J. Eq. 466, 467 (Ch. 1926); Patterson v. J.D. Loiseaux Lumber Co., 92 N.J. Eq. 569, 581 (Ch. 1921); Brinton v. Scull, 55 N.J. Eq. 747, 757 (Ch. 1897), reversed on other grounds, 55 N.J. Eq. 489 (E. & A. 1897); and Dean v. Anderson, 34 N.J. Eq. 496, 503 (Ch. 1881). Cf. Weidenbaum v. Raphael, 83 N.J. Eq. 17, 19 (Ch. 1914); and 3 Pomeroy, Equity Jurisprudence (5th ed. 1941), § 750, at pp. 36-41, and § 755, at pp. 63-65. Furthermore, as Chancellor Zabriskie stated in Haughwout and Pomeroy v. Murphy, 21 N.J. Eq. 118 (Ch. 1870), affirmed 22 N.J. Eq. 531 (E. & A. 1871):
"The law of the English courts is, that until the defence of a bona fide purchase is perfected by the delivery of the deed of conveyance, and the payment of the entire consideration money, such purchaser is without any protection as against the estate of the equitable owner under a prior contract, even though he contracted to purchase, and accepted his deed and paid part of the purchase money in good faith; his only remedy being against his vendor to recover back what he has paid on a consideration which has failed. In some of the American courts this doctrine has been qualified to the extent of enforcing specific performance of the prior contract, on condition that the purchaser shall be indemnified for the purchase money paid, and also for permanent improvements put upon the property before notice, on the principle that he who asks equity must do equity. * * *
The doctrine of the English courts is necessary to give effect to the principle that in equity, immediately on the contract to purchase, an equitable estate arises in the vendee, the legal estate remaining in the vendor for his benefit. Qualified by the obligation to make compensation to any subsequent bona fide purchaser, who has paid part only of the consideration money, for all disbursements made before notice, the rule is every way consonant with correct principles. Such indemnity is protection pro tanto.
But whatever the nature of the relief may be in cases where the naked question of the acceptance of a deed and payment of part of the consideration before notice is presented, the relief indicated by the Chancellor is the only relief the complainants are entitled to under the circumstances of this case. The rule of law which deprives a subsequent purchaser who has contracted for and accepted a conveyance, and paid part of the purchase money in good faith, *134 of the fruits of his purchase without indemnity, is exceedingly harsh, and often oppressive in its application. Mitigated by the obligation to make indemnity for payments and expenditures before actual notice, its operation is nevertheless frequently inequitable. A party who asks the enforcement of a rule of this nature against another who is innocent of actual fraud, must seek his remedy promptly. He may lose his right to specific relief against the lands by laches, and be remitted to the unpaid purchase money as the only relief which will be equitable. In cases where the prayer is for the specific performance of a contract between the immediate parties to the suit, delay in filing the bill is often of itself a bar to relief. * * *" (22 N.J. Eq., at pp. 548-549)
It should be noted that the only document to which I will refer is the mortgage dated July 21, 1960. In this connection, not only did the defendants fail to introduce any satisfactory evidence that the said mortgage was extinguished, cancelled or satisfied by a subsequent mortgage or security transaction, cf. generally, Hutchinson v. Swartsweller, 31 N.J. Eq. 205, 206-207 (Ch. 1879); Kushinsky v. Samuelson, 142 N.J. Eq. 729, 731 (E. & A. 1948); Sixteenth Ward, etc., Ass'n v. Reliable Loan, etc., Co., 125 N.J. Eq. 340, 342-343 (E. & A. 1938); Ocean County National Bank v. Stillwell, 123 N.J. Eq. 337, 342 (E. & A. 1938); and Appelget v. Van Hise, 44 N.J. Super. 507, 521 (Ch. Div. 1957), but the plaintiffs, through the testimony of Morris Scult, conceded that (1) they did not consider the mortgage between Wassberg and Bromor, dated July 24, 1961, to be a subsisting, valid and binding obligation, and (2) they were not attempting to foreclose any mortgage other than the one between themselves and Bergen.
Returning to the present controversy between the parties, I find as a fact that the Hertels and the Finkelsteins each advanced slightly more than 17% of the total purchase price before they received actual notice of a possible superior claim against their lands. The question remains, however, whether they were, or are, chargeable with notice of any kind by reason of the Recording Act of this State. See N.J.S.A. 46:21-1 and 46:22-1.
*135 At the time the Finkelsteins and Hertels entered into their contracts to purchase their respective tracts of land, they were chargeable with constructive notice of the facts contained in the July 21, 1960 mortgage from Bergen Valley Builders to Bromor. See, generally, N.J.S.A. 46:21-1 and 46:22-1; Camp Clearwater, Inc. v. Plock, 52 N.J. Super. 583, 598-599 (Ch. Div. 1958), affirmed, 59 N.J. Super. 1 (App. Div. 1959), certif. denied, 32 N.J. 348 (1960); Breitman v. Jaehnal, 99 N.J. Eq. 243, 247 (Ch. 1926), affirmed per curiam, 100 N.J. Eq. 559 (E. & A. 1927); and Roll v. Rea, 50 N.J.L. 264, 268 (Sup. Ct. 1888), affirmed 57 N.J.L. 647 (E. & A. 1895). Cf. Knox v. Kaelber, 140 N.J. Eq. 598, 602 (E. & A. 1947), and 13 N.J. Practice (Lieberman, Abstracts and Titles) (2d ed. 1951), §§ 950, 956, 1582. The question of the extent and exact nature of any chargeable notice beyond actual and record notice still remains for disposition.
The obligation imposed upon a prospective purchaser to make a reasonable and diligent inquiry in connection with claims or rights in and to real estate  or be charged with facts as such an inquiry would uncover  arises only where facts are brought to the knowledge of that person which are sufficient to apprise him of the existence of an outstanding title or claim, or the surrounding circumstances are suspicious and the party purposefully or knowingly avoids further inquiry. See Real Estate-Land, etc., Co. v. Stout, 117 N.J. Eq. 37, 44-45 (E. & A. 1934); Todd v. Exeter Land Co., 104 N.J. Eq. 431, 434 (E. & A. 1929); Raritan Water Power Co. v. Veghte, 21 N.J. Eq. 463, 478-479 (E. & A. 1869); Hoy v. Bramhall, 19 N.J. Eq. 563, 572 (E. & A. 1868); Shoyer v. Mermelstein, 93 N.J. Eq. 57, 60 (Ch. 1921); Schwoebel v. Storrie, 76 N.J. Eq. 466, 469 (Ch. 1909); and Smallwood v. Lewin, 15 N.J. Eq. 60, 63 (Ch. 1862). Additionally, I feel that in the absence of knowledge of any kind concerning the property to be purchased it would be inequitable to automatically and unhesitatingly decide that every prospective *136 purchaser is irrebuttably charged with knowledge of the facts contained in the record together with such facts as a reasonable inquiry might uncover. A more equitable solution is to create a rebuttable presumption that a party has searched the record and discovered facts contained therein which put him on inquiry to pursue his search further. When the party against whom the presumption operates introduces evidence which establishes that he did not in fact search the record  as is the inevitable case where a person has only reached the stage of signing a contract to purchase real estate  the presumption disappears and he is chargeable only with notice of the facts contained in the record together with such facts as he actually knows. Proof may then be introduced by the opposing party to establish that a search was made.
I find as a fact that neither the Finkelsteins nor the Hertels had a title search made of their properties prior to the time that they entered into a contract with Wassberg or prior to the time they had paid any money to their common grantor. Furthermore, no proof was introduced that any suspicious circumstances were brought to the defendants' attention. In short, and under the formula of the preceding paragraph, these defendants were only chargeable with notice of such facts as were contained in the mortgage on record. Thus, the defendants occupied the status of bona fide purchasers for value without notice to the extent of the property not included in the July 21, 1960 mortgage and up to the amount of the consideration actually advanced.
While the defendants raised a question as to the possible effect of negligence on the part of the plaintiffs in connection with their right to reform the July 21, 1960 mortgage, I find that no satisfactory proof was introduced to establish such a contention. In any event, I do not feel that the general rule that negligence precludes reformation should be applied inflexibly (under the fact pattern of this case) to prevent reformation of the July 1960 mortgage. *137 Compare the fact patterns in Asbestos Fibres, Inc. v. Martin Laboratories, Inc., 12 N.J. 233, 244 (1953); Millhurst, etc., Drying Co. v. Automobile Ins. Co., supra, 31 N.J. Super., at pp. 434-435; Riggle v. Skill, 9 N.J. Super. 372, 379 (Ch. Div. 1950), affirmed per curiam, 7 N.J. 268 (1951); Elizabethport Banking Co. v. Delmore Realty Co., 116 N.J. Eq. 270, 276 (Ch. 1934); Friel v. Turk, 95 N.J. Eq. 425, 429 (Ch. 1924), and Mullen v. Cronan, 90 N.J. Eq. 392, 395 (Ch. 1919).
Although the defendants theoretically hold part of their properties free and clear of the plaintiffs' mortgage, from a practical standpoint there is no reason why all of the properties in question cannot be sold at a foreclosure sale and an equitable provision made as to the order in which the tracts shall be sold, cf. Annotation, 61 A.L.R.2d 505 (1958), with special attention given to the order of priority in and to the moneys raised at the sale. Indeed, under the peculiar facts of this case, a complete denial of the right of foreclosure or, in the alternative, a foreclosure of a part of the properties, seems to be as unrealistic as it would be unjust. Thus, the plaintiffs will be permitted to proceed with a foreclosure sale of all four tracts subject to the following findings and conditions: (1) the order of sale will be the Hrab tract, the Pape tract (these two tracts were expressly included in the July 21, 1960 mortgage), the Finkelstein tract and the Hertel tract; (2) the plaintiffs' lien  $25,300 plus 6% interest from the date of default  shall be divided into four parts to cover each tract in an equal amount, i.e., the plaintiffs' lien on each tract shall be one-fourth of $25,300 plus the 6% interest figure; (3) the Hertels shall have a preference over the plaintiffs up to $4,600 on any proceeds realized from said sale, any excess to go to the plaintiffs; (4) the Finkelsteins shall have a preference over the plaintiffs up to $1,567, then the plaintiffs for their one-fourth of $25,300 plus interest, then the Finkelsteins for the remainder of their lien, or $3,133. It should be noted that the $4,600 figure used for the Hertels *138 represents the money advanced by them for their property (the ten feet included in mortgage is negligible), and the $1,567 figure utilized for the Finkelsteins represents approximately one-third of the $4,700 advanced by them; said one-third of $4,700 is used because the Finkelsteins were only bona fide purchasers of one-third of the whole tract  two-thirds being included in the mortgage.
Although the plaintiffs asked, in their amended complaint, for an award of damages against defendants Hertel and Finkelstein, no testimony or evidence was introduced which would justify or support the granting of any such affirmative relief against these defendants. On the other hand, the defendants are entitled on their cross-claim to an award of damages against defendant Wassberg, who has defaulted, for $4,700 (Finkelsteins) and $4,600 (Hertels). Both of these defendants shall also be entitled to costs and interest against Wassberg from the date the moneys were paid. The plaintiffs are not entitled to costs.
An appropriate form of judgment should be presented.